[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On April 26, 1995, the court granted a motion by the Department of Children and Families (DCF) to consolidate a neglect petition filed on March 10, 1995 with a petition to terminate the parental rights of the respondent parents filed on March 29, 1995 to their daughter Jessica M. born on October 29, 1990 (Keller, J.). This coterminous petition proceeded to trial on September 29, 1995, and was heard on numerous days, and ended on April 22, 1996. All of the parties were properly served and represented by counsel.
In this coterminous petition, DCF must prove and the court must first find the child to have been neglected by a fair preponderance of the evidence, and upon such finding, proceed to find whether either of the two statutory grounds alleged in the termination petition has been proven by clear and convincing evidence and that termination is in the best interests of the child. The acts of neglect must have existed over an extended period of time but shall not be less than one year. (Section17a-112(c) and Sec. 1046.1 C.P.B.). CT Page 5433-SSS
The two statutory grounds alleged by DCF in the termination petition pursuant to Sec. 17a-112(b)(2) and (3) were as follows:
1. Failure to Rehabilitate
That the child has been adjudicated neglected and uncared for in a prior proceeding and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of the child.
2. Parental Acts of Commission or Omission
That the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral and emotional well-being. Non-accidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of omission or commission.
Some of the background facts are not in dispute and are set forth in a Summary of Facts and the mandated study filed by DCF with the termination petition. The first referral to DCF was made by Dr. Scott Teittlebaum who reported that the mother had brought this one month old child to him complaining that the child was vomiting. Upon examination, he observed a large swelling on the right side of the child's head. The CAT scan he ordered revealed an older swelling on the left side of her head with a small amount of brain swelling below the cranium. On November 29, 1990, the doctor advised DCF that the mother's explanation that the child's head may have hit the door knob when she walked into a door with the child in her arms the night before was highly unlikely based on the seriousness of the injury, a fractured skull. On November 29, 1990, the mother admitted to a DCF social worker and a police officer of striking the child on two separate occasions with her open hand. Because of the seriousness of the injuries, the child remained in Middlesex Hospital in Middletown from November 30 through December 3, 1990. On December 3, 1990, DCF filed for an Order of Temporary Custody and a coterminous petition to terminate their parental rights. The order for temporary custody was granted and on that day the child was placed in a licensed foster home. On March 15, 1991, DCF withdrew CT Page 5433-TTT the termination petition, and by agreement, the child was adjudicated neglected and committed to the custody of DCF for eighteen months (Goldstein, J.). From March 15, 1991 to October 10, 1991, a period of about seven months, DCF provided these parents with intensive reunification services. On October 10, 1991, DCF returned the child to the respondents because they had successfully rehabilitated and provided them with protective services through July 17, 1992, when the file was closed.
On March 9, 1995, three and one-half years later, DCF received a second referral from a battered women's shelter in New Britain that the mother had brought the child there with visible bruises on her body.
Adjudication. From November 28, 1990, the date of the first referral to DCF, to the date the termination petition was filed on March 29, 1995.
The court shall first consider the failure to rehabilitate ground. (Section 17a-112(b)(2) C.G.S.).
The court has taken judicial notice of the entire file from November 28, 1990, when the child sustained a fractured skull, which the mother admitted she caused.
From the summary of facts filed by DCF, the court finds the child was adjudicated neglected pursuant to § 46b-120 C.G.S., and by agreement, the child was committed to DCF for eighteen months on March 15, 1991 (Goldstein, J.). From that date, to October 10, 1991, DCF provided these parents with intensive reunification services, and the child was returned to them because these parents had successfully rehabilitated. From October 10, 1991, through July 17, 1992, DCF provided home protective services to these parents and closed out the file on July 15, 1991. For about the next three and one-half years the child lived with her parents without any referrals to DCF.
On March 9, 1995, DCF received a second referral from Ms. Linda Kochal, the director of the Prudence Crandall Women's Shelter, who reported that the mother had been subjected to spousal abuse by the father and the child had visible bruises on her legs and back. The child, who was now four and one-half years old, told DCF worker Bruce Wrobel that her parents had physically abused her. The mother admitted having punched her with a closed fist. On March 10, 1995, DCF obtained an order of temporary custody and filed a neglect petition alleging the child had CT Page 5433-UUU sustained bruises to her back, buttocks, hip, and legs and the child was placed in a foster home to insure her safety. This neglect petition was consolidated with a petition to terminate their parental rights filed March 29, 1995 (Keller, J., 4/26/96).
The court must first consider the allegations in the neglect petition which state that the child was permitted to live under conditions injurious to her well being and was being denied proper care and attention physically and emotionally, which DCF must prove by a fair preponderance of the evidence against the parents. The mother, who testified at trial, admitting striking the child on the head on March 9, 1995, with a closed fist. The father admitted striking the child on the buttocks on two occasions which caused the bruises to her buttocks. From the summary of facts prepared by DCF worker Bruce Wrobel filed on March 10, 1993, and his testimony at trial, and the testimony of the present DCF worker Kelly C. McVey, the court finds this child to have been neglected by a fair preponderance of the evidence for injuries the parents inflicted on her on March 9, 1995. Therefore, the child is committed to DCF for one year. (PA 95-238(d) 1995).
As previously stated, the termination petition filed by DCF on March 29, 1995, alleges two grounds.
I. Failure to Rehabilitate
Section 17a-112(b)(2), the failure to rehabilitate ground, authorizes a court to grant a petition to terminate parental rights if it finds that the parent of a child has been found by the superior court to have been neglected in a prior proceeding and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of the child. In reMichael M., 29 Conn. App. 112, 123 (1992). Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. Section 17a-112(b)(2) requires the trial court to analyze the respondents rehabilitative status as it relates to the age and needs of a particular child, and further, to determine whether their rehabilitation is foreseeable within a reasonable period of time. In re Luis C., 210 Conn. 157, 167
(1989).
The court has considered all of the facts relating to the CT Page 5433-VVV head injuries caused by the mother to this child, on November 29, 1990 to the date of the termination petition was filed and consolidated on March 29, 1995. The record proves that DCF was able to rehabilitate these parents with intensive services provided to them from March 15 to October 10, 1991. Thereafter, the child was returned to them on October 10, 1991 and remained in their custody without any further referrals to DCF until March 10, 1995, a period of about three and one-half years. On that date DCF obtained an Order of Temporary Custody after the mother had struck the child on the head and the child had also sustained bruises to her legs and buttocks, which admittedly were caused by these parents. However, from the results of the X-rays and CAT scans taken of the child at New Britain General Hospital on March 9, 1995, were negative as to any fractures to the head or body.
DCF has provided the mother with individual therapy since April 1995. She has been in compliance with this therapy, as well as the bi-weekly supervised visitation except for two occasions. DCF has denied the father visitation with his child since March 9, 1995 based on the clinical recommendation of Dr. Mark Kaplan. (State's Exhibit 7). Dr. Kaplan, a state licensed psychologist, has submitted three evaluations of these respondents and the child since December 1990. (State's Exhibits 4, 5, 8, — 9/29/95). He finds the father to have low to average intellectual ability, poor judgment and insight and is a psychologically limited man. Dr. Kaplan finds that the mother has mental deficiencies, and suffers from a post traumatic stress disorder. (State's Exhibit 8). He finds the child to be developmentally delayed with specialized needs. The present foster home and the school she now attends are doing an excellent job in meeting these needs.
From the testimony of the father, the court finds he has been working for the past six years full time for the Durham Manufacturing Company and also works part time handling four paper routes for the Hartford Courant. He is presently separated from his wife and lives with his mother to save money in order to buy a house. He denied being addicted to drugs or alcohol, and has no criminal record. He has attended parenting classes and counselling. He admits spanking his daughter on the buttocks on two occasions, once for climbing on a table and another time when she touched a space heater.
These parents were successfully rehabilitated in October 1991 after the child sustained a fractured skull, and they then parented the child properly for almost three and one-half years until March 1995. Based on their previous successful rehabilitation, this court does not find the evidence to be clear CT Page 5433-WWW and convincing that their parental rights should be terminated on this first ground of failure to rehabilitate and that termination is in the best interests of the child, therefore this first ground is dismissed.
II. Parental Acts of Commission or Omission
It was undisputed that the mother inflicted serious physical injuries on this child, a fractured skull, on or about November 29, 1990 which the father was unable to prevent. A second referral to DCF occurred on March 9, 1995, after the mother admitted striking the child on the head a second time, and the father admitted spanking the child on the buttocks. These parental acts resulted in the placement of the child in a foster home after the order of temporary custody was granted on March 29, 1995.
However, both these parents were able to be successfully rehabilitated in 1991 by DCF providing intensive services. They parented the child properly for about three and one-half years until March 1995. In the last evaluation of the parents and child, Dr. Kaplan found the father to have no mental disorders, who can be a loving, caring father and able to nurture his daughter. (State's Exhibit 8). He is able to work full time. With help from his mother, the father believes they can properly care for his child.
Dr. Kaplan reported the mother to be of limited intellectual capacity, and can be overwhelmed under stress. On March 9, 1995, she admitted to DCF social worker Bruce Wrobel that her parental responsibilities were overwhelming her the same way they did when she fractured the child's skull in March 1990.
The result of this second incident resulted in the child sustaining bruises to her legs and buttocks; however, the X-rays and CAT scan were negative for fractures. Therefore, the court finds these injuries were not sufficiently serious enough to terminate their parental rights. They did result in the child's development being delayed and she suffered psychological trauma.
The court does not find the evidence to be clear and convincing on this second ground nor would it be in the best interests of the child to terminate the respondent's parental right. Therefore, the termination petition is dismissed.
Section 1046.1 of the Connecticut Practice Book provides: CT Page 5433-XXX
 "If the court determines that termination grounds do not exist or termination is not in the best interest of the child, then the court may consider any of the dispositional alternatives available under the neglect, uncared for or dependent petition by a fair preponderance of the evidence.
The court has previously found the child neglected by a fair preponderance of the evidence for injuries inflicted on her by these parents March 9, 1995, therefore commits the child to DCF for a period of one year. (P.A. 95-238(d) 1995). During this one year period, the court orders DCF to provide both parents, who are presently separated, with intensive rehabilitative services, and additional supervised visitation. These respondents were successful in rehabilitating in October 1991, and the court shall give them a second opportunity to rehabilitate during this one year that the child is committed to DCF.
Petroni, J.