Memorandum of Decision
On July 8, 1998, the department of children and families ("DCF") initiated the present action to terminate the parental rights of Julie K. and Henry L., the acknowledged parents of Sarah Ann, a child born on November 6, 1994. The grounds alleged by DCF are as follows: (A) The child has been abandoned by the parents in the sense that the parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child;
and (B) the parents of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child.
The present petition was filed after a prior petition to CT Page 7 terminate parental rights was dismissed by this court on January 28, 1997. That petition was dismissed without prejudice to the Commissioner to refile a petition if necessary, after offering appropriate reunification services to the respondent father, and after a good faith analysis of the grounds which may appropriately apply to the case. The findings contained in that decision are the law of the case and are adopted as findings in this decision. The court found at the time by clear and convincing evidence that the mother of Sarah Ann, who had been found by the Superior Court to have been neglected or uncared for in a prior proceeding had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. The court entered an adjudication at that time but reserved disposition of the mother's case until this time. The court will now take up that issue as well as the grounds as to the respondent, Henry L
 Facts:
The following facts are found by clear and convincing evidence and represent a composite of the court's prior findings, as expressed in the prior Memorandum of Decision (which has been marked as full Exhibit #10 in this proceeding.), as well as the findings based upon evidence presented on this date. The court heard from Richard Sadler, a psychiatrist, Paula Ohlon, mother's counselor, Teresa Kelley, father's Department of Corrections counselor, Martha Barnes, a certified drug and alcohol counselor and the present DCF social worker. The parents were present in court but did not testify.
The childs male biological parent, Henry L., was born on August 15, 1952. He is now 46 years of age, he has never been married and has no other children. His father died when he was five years old and his mother subsequently suffered a nervous breakdown. Henry was placed in an orphanage and remained in various homes and schools until his graduation from high school at which time he joined the navy where he remained for eight years. While in the navy he became a skilled welder.
It appears from the evidence, the social study and the report of Dr. Richard Sadler, a psychiatrist who conducted an evaluation on Henry, that Henry is quite able to work and survive in strong, structured, institutional settings such as the orphanage, his CT Page 8 school, the navy, and in community correctional centers. Henry has, however, had a difficult time in less structured environments. (See Exhibits #1, 2, 3)
Henry has a long history of criminal activity dating back to 1977. His record with the Connecticut State Police Bureau of Identification (Petitioner's Exhibit #4) shows ten arrests between 1988 and his last arrest in July of 1997. The last two of those arrests involved in a three year jail sentence and a one year sentence for possession of narcotics. His other arrests have been for breach of peace, burglary in the third degree, failure to appear, assault, larceny and possession of controlled substance charges. His last arrest and sentence occurred after this court advised him to avoid further involvement with the criminal justice system.
Henry was offered visitation with Sarah Ann by DCF once a month while Henry was in a community correctional center. There were two such visits, one June 28, 1995 and one on August 29, 1995. (Petitioner's Exhibit #14). Henry was then released from prison and was placed in a half-way house for "criminal justice clients." He remained in the half-way house for eleven months until September 1996. His visits with Sarah Ann did not occur between September, 1995 and December, 1995. No explanation for this four month lapse was offered either by the father or DCF. Since this court's decision to dismiss the prior termination petition twenty four months ago, Henry has visited eight times, the last time being in April of 1998. After that time Henry was incarcerated for six months during which time he did not press the social worker for visitation, nor did he have his counselor contact the DCF social worker to arrange for visitation.
The Memorandum of Decision of January 28, 1997 called for the parties to set expectations for the father within thirty days. (Emphasis added). The testimony presented indicated that efforts were made by DCF to draft proposed expectations and sent them to the respondents. Exhibit #5, the social study for the termination of parental rights indicates that expectations were in fact prepared and that on February 25, 1997, and March 11, 1997, neither of the parents appeared in court to set the expectation[2]. The court hearings to set the expectations were continued and not heard.
What is clear is that after an opportunity for hearing on March 21, 1997, Judge Potter at the extension of commitment CT Page 9 hearing found that continuing efforts to reunify were not appropriate, likely because the father had failed to appear at the two prior court hearings established for the development of a plan of expectations to assist in his reunification with his daughter. (Exhibit #8). Similarly, on February 24, 1998, at another extension of commitment hearing, Judge Driscoll found that continuing reunification efforts were not appropriate. Henry had been given an opportunity by this court to work toward reunification and had failed to act with the devotion and dedication of a parent genuinely interested in reunification. The findings of Dr. Sadler had been confirmed:
"Henry L. is a 44 year old father of one child. Mr. L's presentation and functional abilities are unchanged from his previous evaluation. Mr. L is, in my opinion, a narcissistic and psychopathic personality disordered man. He has functioned on the margins of relationships and he has demonstrated periods of functional working capacity on an intermittent basis over the years. Mr. L's working ability are testified to by his skills as a welder and his ability to work for protracted periods of time. Mr. L has not developed important relationships in his life. Mr. L gives no indication that Julie K. or Sarah Ann have influenced his behavior over the past years. Mr. L's lack of concern for his future development and the impact upon a child of a protracted foster care placement has no discernable emotional impact upon Mr. L. Mr. L's intellectual abilities are estimated to be within the average range. No depressive disorder, anxiety disorder, affective disorder or psychotic disorder is noted in Mr. L. The impairments in Mr. L's functional abilities appear to be entirely accounted for by his personality style which has been present, stable and functionally impairing over many years. Mr. L has shown no indication of an attempt to alter his style in order to minimally adequately care for his daughter. (Petitioner's Exhibits #1 2)
The social study narrates a history of social, vocational and emotional instability of Henry since the last termination hearing. He has been unable to maintain employment or housing. He has been incarcerated, lived in homeless shelters and with friends. He maintains he has no problems with substance abuse but is frequently found to be drinking or with alcohol on his breath. He admits to recent black-outs and hang-overs to the substance abuse evaluator from the southeast alcohol and drug dependence program counselor, Martha Barnes. She concluded that not withstanding Henrys denials, he had an alcohol problem that he was unwilling to treat. CT Page 10
Dr. Sadler concludes his two reports indicating that there is no longer any hope that either parent would be able to develop the ability to minimally adequately care for their daughter and that allowing further time to pass prior to a determination of parental rights would only prolong the state of Sarah's condition as a foster child. According to Dr. Sadler, Sarah will never be able to be cared for adequately by her parents.
The current social worker reported that Sarah is fully attached to the foster family that she has been with since birth. The foster family would adopt her if possible and that is consistent with the DCF permanency plan (Exhibit #7).
 Adjudication:
With respect to the statutory grounds for termination of parental rights of the father, as with the mother, the court finds by clear and convincing evidence that the child has previously been adjudicated neglected and uncared for on September 21, 1995 and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, such parent could assume a responsible position in the life of the child. General Statutes 17a-112 (c)(3)(B) This ground is found by clear and convincing evidence. The court finds that this ground has existed for more than one year.
The court makes the following factual findings required by17a-112 (e):
A.) Appropriate and timely services were provided by the Department of Children and Families, including the following relevant services:
1) Visitation at the foster parents home. 2) Instruction on care of a newborn child. 3) Mothers Place services for mother's including parenting classes. 4) City and state financial aid. 5) TVCCA services to find an apartment, counseling, transportation assistance, and visitation coordination.
Services to the father included: 1) City assistance for financial and medical assistance, 2) substance abuse evaluation and treatment, 3) Smith Bent visitation and parenting skills training 4) individual counseling at Family Services and 5) visitation CT Page 11 coordination.
B.) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. The court finds in this proceeding that the father was unable, due to his incarceration and lack of sincere motivation to benefit from reunification efforts. Mothers inability or unwillingness to address her multitude of personal problems, has prevented successful reunification efforts.
C) The Department, with the approval of the Court, initially set reasonable and realistic expectations and service agreements in order to reunify the family. There was only marginal compliance or participation by the parents. See discussion of problems setting expectations for father.
D) The child has strong emotional ties with the foster family who has provided the physical, emotional and educational support this child needs. The child has little or no positive emotional ties to the biological parents. The child has only a visiting relationship with father, not a parental relationship. His inter-relations with the child were not age appropriate and demonstrated a complete lack of understanding of involved, emotional, parental conduct.
E) Finding regarding the age of the child. Sarah Ann is four years of age. This child requires stability of placement and continuity, of care.
F.) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions etc. The parents have not made realistic and sustained efforts to conform their conduct to acceptable parental standards. Mother requires extensive therapy to deal with her parental failings and personal psychiatric difficulties. While father has been incarcerated he has, to his credit, completed various program offered for his personal rehabilitation. His failure to maintain a relationship with his child has displaced him as a possible parental figure. His psychiatric profile suggests that he will never be able to serve in a parental role. Giving them additional time would not likely bring their performance, as parents, within acceptable standards sufficient to make it in the best interests of the child to be reunited. In re Luis C. 210 Conn. 157 (1989); In re JuvenileCT Page 12Appeal 183 Conn. 11, 15 (1981). The child has been in foster care for approximately four years, far longer that the fifteen out of the past twenty-two months that are permitted under the Adoption and Safe Families Act of 1997.
G.) Finding regarding the prevention of the parents from having a meaningful relationship etc., The substance abuse and criminal behavior of the father has resulted in his several incarcerations resulting in interruptions in his visitation. When he was not incarcerated his visitation was not consistent. The Department initially attempted to encourage contact. No unreasonable conduct is noted.
 DISPOSITION
The court finds that these grounds and circumstances have existed over an extended period of time which is greater than one year. The court finds, based upon the testimony and evidence presented, that it would be in the childs best interest to terminate the parental rights of Julie and Henry at this time. This finding is made after considering the child's sense of time, her need for a secure and permanent environment, the relationship that the child has with the foster parents, and the totality of circumstances. In re Juvenile Appeal (Anonymous), supra,177 Conn. at 667-68. See generally, J. Goldstein, A. Freud A. Solnit,Beyond the Best Interests of the Child 99 (1979).
 Order:
Based upon the foregoing findings, the court determines that it is in the child's best interest for a termination of parental rights to enter with respect to the biological parents, Julie K. and Henry L. It is accordingly, ORDERED that their parental rights are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan shall be submitted within 90 days. A review Plan for Terminated Child shall be filed in accordance with Federal Law.
Francis J. Poley, Presiding Judge Child Protection Session