[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Jose and Elizabeth were adjudicated neglected and committed to the care and custody of the Commissioner of DCYS on September 23, 1986, founded on admissions entered by both parents. The commitments have been extended by one year periods.
On July 19, 1990, DCYS filed Termination of Parental Rights Petitions alleging, as to the father: CT Page 3559
1. failure to rehabilitate;
2. acts of omission and commission;
3. abandonment;
4. no on-going parent-child relationship, and, as to the mother, a failure to rehabilitate.
This family first came to the attention of DCYS in June, 1984 by referral which led to a service agreement with the mother in September, 1984, (Plaintiff's Exhibit U).
By complaint dated March 27, 1985, the father brought a civil action against the mother seeking a dissolution of their marriage, Waterbury J.D. Docket #FA 07 20 87. The marriage was dissolved by decree entered September 13, 1985. The judgment suspended the visitation rights of the father with any of the children of the marriage until a Family Relations visitation study was completed. An examination of the file indicates that the suspension of visitation remains in effect.
On July 11, 1986, the mother left her four children unattended at home where kerosene lamps were in use. When she returned to the apartment, it was burning. Two children died as a result. Elizabeth and Jose were treated at Yale New Haven Hospital and then placed in foster care, (Plaintiff's Exhibit B, notes entered 7/14/86 and 7/23/86). The mother was found guilty of two counts of risk of injury to a minor as a result of this fire, (Plaintiff's Exhibit W).
The mother began visiting at the foster home but, due to difficulty in managing the children during visits, future visits were arranged to take place at the DCYS office. The visits did not improve with the change of location.
Jose began therapy sessions in November, 1986 but by January, 1988 it was concluded in Dr. Robert S. McWilliam's report, that Jose's deterioration in functioning coincided with the start of unsupervised visits with his mother, (Plaintiff's Exhibit AA). An evaluation of Jose made in January, 1989 revealed him to be of average intelligence but emotionally he was suffering from a post-traumatic stress syndrome based on his assumption of responsibility for the fire. Residential treatment was recommended for Jose. (Plaintiff's Exhibit Y). An evaluation of the mother done at the same time revealed many unresolved emotional issues and a rigid mother, (Id.). This emotional state was found in the mother in an earlier evaluation done of her by Dr. Sidney S. Horowitz, Ph.D. on August 27, 1986 when he concluded CT Page 3560 that he found no trace of attachment for her children, (Plaintiff's Exhibit Z). However, he found no psychosis.
DCYS's treatment plans dated August 15, 1989 for Jose and Elizabeth stated that "Tpr will be filed by DCYS.", (Plaintiff's Exhibits M and N). The decision was based on the mother's inconsistent pattern of visits and the failure of overnight visits that were attempted in 1988.
Jose was placed in residential treatment at High Meadows in Hamden in August, 1989. His mother continued to visit Jose at High Meadows but no change occurred in their relationship. As of the time of trial, the High Meadows psychiatric social worker testified that Jose was ready to return to the foster home where he wants to go. The recent evaluation of Jose by Dr. Ralph S. Welsh, Ph.D. on March 26, 1990 concluded he was of average intelligence but in need of supportive therapy, stability in his life and considerable behavioral shaping, (Plaintiff's Exhibit FF).
An evaluation of Elizabeth by Dr. Welsh on the same day showed a very insecure young girl of average intelligence. Dr. Welsh also found some ambivalent feelings displayed by the foster mother toward Elizabeth, (Plaintiff's Exhibit DD).
The mother was also evaluated by Dr. Welsh on May 5, 1990 who stated that:
 "The patient's ability to manage two troubled children considering her present psychological state is in serious doubt."
And then he concluded that:
 "The parent does not appear to be an individual capable of providing the type of support which her two special needs children require at the present time."
(Plaintiff's Exhibit GG).
A "Family Interaction Study" prepared the same day by Dr. Welsh concluded that Jose was beyond his mother's control. Elizabeth tried to be a peace maker. Jose was described as "an awry, willful young man", (Plaintiff's Exhibit HH).
This type of behavior may account for Jose's extended stay at High Meadows. CT Page 3561
The mother had been attending parenting classes from 1986 to 1988. The classes were suspended because the teacher was having a baby. The mother has also attended counselling since 1986. In order for the mother to visit Jose at High Meadows, she must take a bus into downtown New Haven and then transfer to another bus to Hamden, about 2-1/2 hours each way for a one hour visit with her son.
She has been visiting her daughter weekly at the DCYS office and once weekly at her home with a parent aide present. Ms. Sally Ward, the parent aide, testified that the mother was cooperative, improved a lot, will listen and has shown the witness that a bond exists between the mother and daughter.
Mother's therapist for almost three years, Marcia Borenstein, testified that the biggest change in the mother has been in her ability to listen. The mother has strong religious beliefs which, in her therapist's opinion, interferred with her thinking at first, but her religion also "kept her going" after the loss of two of her children. She has become able to assume more responsibility for her life.
FATHER
There is no room for doubt that the father has failed to achieve such degree of personal rehabilitation as to encourage the court to find that the father will assume a responsible position in the life of either child. He has been barred from visiting since the dissolution decree and has taken no action to modify that court order.
The father did allow Dr. Campagna to evaluate him pursuant to court order (Plaintiff's Exhibit CC). The father failed to attend the second and third days of trial and his absence was unexplained.
The father displayed a very sporadic interest in his children. His conduct constituted abandonment, In re Rayna M.,13 Conn. App. 23, 36-37.
The TPR petition also alleges no on-going parent/child relationship, section 17-43a(b)(4), now numbered Section17a-112 (b)(4). The children have little memory of their father. Jose believed he was in jail. Elizabeth was 18 months old when the father was barred from visiting. To attempt to introduce the father into these children's lives at this late date is obviously not in their best interests. As to the last basis, formerly Section 17a-112(b)(3), Section 17-43a(b)(3), the father has not been in a position to commit acts of commission or omission. This ground is found not proven as to the father. CT Page 3562
The Commissioner of DCYS has proven the three remaining grounds alleged as to the father, all by clear and convincing evidence.
Therefore, it is the order of the court that the parental rights of the father, Jose Laracuente, in and to Jose L. and Elizabeth L. are hereby terminated.
MOTHER
The petitioner seeks to terminate the parental rights of the mother, Jean M. on one ground, that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child, Section 17a-112(b)(2) formerly numbered Section 17-43a(b)(2). The neglect adjudication was made on September 23, 1986 after admission by the parents to the allegations in the neglect petition.
The difficulty in applying the statutory criteria to the mother is the statute characterization of the place for the mother who is to "assume a responsible position in the life of the child". As was pointed out in In re Migdalia M., 6 Conn. App. 194,202-208, the failure to rehabilitate is not tested solely by the mother's handling of the expectations of the treatment plans. Nor must the mother either assume full time responsibility for a child's care to avoid termination. However, this court does not test the petitioner's case by only examining the progress or lack of progress of the mother. A reading of In re Luis C., 210 Conn. 157
speaks of "a parent-child relationship" (at p. 166), "progress. . . . made in improving her parenting skills. . . was unpromising" (p. 166), and "the prospects of. . . achieving a useful and constructive role as a parent" (p. 166). In quoting the statute, the court italicized the phrases ". . . within a reasonable time, considering the age and needs of the child" (p. 167). It then directs the court to analyze the rehabilitative status in the context of and "as it relates to the needs of the particular child" (p. 167). After acknowledging that the parent's need for continuing support programs does not furnish a basis for termination, a particular child's age and needs may be such that, even with support systems in place, the parent is not rehabilitated in the context of those special needs of the child in question. Ergo, it is not enough to answer the allegation of failure to rehabilitate with evidence of improvements in the parent's behavior, such as a cleaner apartment, or efforts to attend DCYS meetings, and efforts to visit the institutionalized child. There also must be demonstrated an increased interaction between parent and child, an increasing ability to meet the CT Page 3563 particular child's needs, and some basis on which to project a reasonable expectation or belief that the parent's behavior will lead to a responsible position in the child's life. This test does not involve a moral judgment or a finding of goodness or badness in the parent.
Placed in this context, this court concludes that the petitioner has demonstrated, by clear and convincing evidence, that the mother has not and, within a reasonable time in the future, will not be able to assume a responsible position in either child's life. An extended period of time has already elapsed. A further delay will not be in the best interest of either child. The expert testimony of the several professionals and their reports are unanimous in support of this conclusion.
FINDINGS
In reaching the foregoing conclusions, the court finds (1) that DCYS provided timely and appropriate services to the mother in an attempt to facilitate reunion with the two children, (State's Exhibits F, G, H, I, J, K, L, M, N, O, P, Q, R, T and V). The father did not avail himself of any services since he did nothing to vacate the no visit order in the dissolution decree. DCYS was prepared to extend services to him once the legal bar was removed. (2) Both parents complied with the court ordered evaluations. (3) Jose has been hostile toward his natural mother, and has been steadfast in expressing his desire to live with the foster mother. Although not as steadfast, Elizabeth has expressed her desire to live with the foster mother. The children have significant emotional ties with the foster mother. Neither child has displayed any emotional ties to their father. (4) Jose is 8 years 9 months old. Elizabeth is 7 years 3 months old. (5) The mother has made efforts to adjust her circumstances and conduct in an attempt to make it in the best interest of the children to return to her home. (A) As discussed above, the mother visited with Elizabeth at the mother's home, at the DCYS office, and again at her home. The mother visited Jose via bus trips to his placement. (B) The mother and the foster mother were not in regular contact. (6) The mother was not prevented from maintaining a meaningful relationship with either child by anyone. The court order described above barred the father from visiting with the children. No one else prevented him from maintaining a relationship with his children.
The court finds that termination of both parents' rights in and to Jose and Elizabeth L. is in the best interest of each child. Jose needs stability and a home where he has consistent limits to shape his behavior. Elizabeth needs security and freedom from a feeling of responsibility for her natural mother which the child displays by manipulative behavior. Enough time CT Page 3564 has elapsed. Both children have a stable home awaiting them for the foster parents have expressed a willingness to adopt both children.
The court orders the termination of the parental rights of Jean M. in and to the minor children Jose L. and Elizabeth L.
The court appoints the Commissioner of DCYS statutory agent of Jose L. and Elizabeth L. The statutory parent shall comply with Section 17a-112 (i) within ninety days.
HARRIGAN. J.