[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These actions by the Department of Children and Families ("DCF" or "the department") seek the termination of parental rights of the parents of the above named individuals, Marisol R., who is the mother of all children, John R., the father of Michelle R. and Desiree R. and Michael D., the father of Mary Elizabeth D. and Michael Joseph D. The petitions were filed in the Superior Court Juvenile Matters, Hartford, on May 26, 1998. These children previously had been adjudicated neglected (August 19, 1996 as to the child Michael D. and February 6, 1996 as to the three older children).
The termination petitions were served on the mother by publication. She was defaulted for failure to appear on August CT Page 8829 18, 1998 but later appeared in court and was appointed counsel. During the pendency of this action the mother has been incarcerated, although she had been released from jail some time prior to the trial. The mother failed to appear at trial. The petitioner alleges abandonment, failure to rehabilitate and no ongoing parent-child relationship with respect to the mother.
The father John R. was served in hand. That petition alleged that he consented to the termination of his parental rights, which consent was accepted by the court (Foley, J.) on March 31, 1999.
The father Michael D. was served in hand at court. The petitioner alleges abandonment, failure to rehabilitate and that the father has no ongoing parent-child relationship with the children. Mr. D. was appointed counsel. On March 31, 1999 he indicated to the court that he was not satisfied with his counsel and the lawyer moved to withdraw on April 9, which motion was granted. New counsel was appointed on April 9 with the understanding that the case be set to proceed at trial on May 5.
Preliminarily, as to the allegation of no ongoing parent-child relationship between Michael Joseph D. and his parents, the court will dismiss the petition as a matter of law. Michael has been in the custody of the petitioner since his birth. See In reValerie D., 223 Conn. 492 (1992).
The court finds that there is no other proceeding pending in any court affecting the custody of the children.
The court heard from two foster mothers each of whom was caring for two of the children; two DCF social workers; Dr. Bruce Freedman, a psychologist who did a number of evaluations of the family and Ahmad Zubairi, M.D. who evaluated Mary Elizabeth. The respondent Michael D. testified in his own behalf. He also called Earl McWilliams from the Access Emergency Shelter in Danielson where the father was residing at the time of trial.
The court received into evidence fourteen exhibits offered by the petitioner and two exhibits offered by the respondent/father Michael D. The court took judicial notice of the contents of the court files for all four children.
The court finds by clear and convincing evidence that throughout the progress of this case, DCF has made reasonable CT Page 8830 efforts to locate the parents and offer services to them which would have been timely and appropriate for them to seek reunification with their children. The mother has been for substantial periods of time "parts unknown." The father Michael D. has been from time to time parts unknown and at other times has refused services and has not been cooperative with the department. Mr. D. has indicated that he would refuse the offered services on the basis that they were not necessary or were duplicative programs that he was participating in through the Department of Adult Probation. One of the programs which he was directed to participate in by way of expectations was individual therapy to address anger control (Exhibit 5). He refused to take a referral from DCF but he did not submit any evidence that he completed any anger management program either through the Department of Adult Probation or the Department of Corrections. The court concludes that further efforts to reunify the parents, if any would have been made by DCF, would have been unavailing. Furthermore, the court found that efforts to unify Michael D. with his parents were no longer appropriate on August 7, 1997. On February 6, 1998 the court made that finding with respect to the other children.
DCF first became involved with these children in late 1993. There had been a number of referrals to DCF. In September 1995 the petitioner filed neglect petitions and requested an order of temporary custody for the three older children alleging that the mother and Mr. D. were chronic drug abusers and not in treatment, that Mr. D. had an extensive criminal history including inciting to riot, resisting arrest and drug related charges. The mother admitted that the children were not receiving adequate medical attention and that she was not able to provide for the educational needs of the oldest child. The family's home had been condemned; there was no heat, hot water, or electricity. Nor was there adequate food in the home. At the time of Michael Joseph D.'s birth in 1996 the mother tested positive for cocaine. She admitted that she had not had prenatal care and that she used drugs throughout the pregnancy. The parents had not had a permanent residence since September of 1995. After the commitment of the children, the two oldest children were placed in foster care with a relative. The mother's visitation was sporadic. Both the mother and Mr. D. were sporadic in their visiting with the younger two children as well. Petitioner introduced into evidence a number of letters directed to the mother, the father, or the mother and father reminding them that they had missed visitation and asking for cooperation in scheduling further visitation and CT Page 8831 notifying the parents of referrals made for drug evaluation and random screens. The parents missed a number of appointments set with ADRC for evaluations and for testing. The parents missed their visitation notwithstanding the fact that there were communications from DCF, bus passes were provided to them for that purpose, and two of the children were residing with a relative. There were long periods of time when the mother did not see the children although both parents had been more consistent in visitation prior to August of 1996 after which the parents missed many visits. The mother was incarcerated from May of 1997 to August of 1997. The department did not know the mother was incarcerated until July of 1997 at which time visits were arranged in July and August. During that period of time Mr. D. did not disclose to the department the mother's whereabouts. Between August of 1997 and January of 1998 Mr. D. did not contact the department. When he contacted the department he was in prison. Since May of 1997 the mother has seen the children four or five times. Mr. D. saw Mary Elizabeth while she was hospitalized in 1997 but he has not seen her or Michael since that time except during court ordered evaluations. During that period of time neither parent has consistently sent cards, gifts, or made phone calls to the children. On a few occasions the mother did call the child, Desiree, but it was sporadic and upsetting to the child. Neither parent has maintained regular contact with any of Mary Elizabeth's or Michael's caretakers. Both parents became "whereabouts unknown" in September of 1997 and in November of 1997 Mr. D. was located in Somers Prison from which he was released in February of 1998. Shortly after his release he was hospitalized at Cedarcrest Hospital for a fifteen day commitment. On April 7, 1998 Mr. D. contacted the social worker to notify her of his whereabouts. The mother was again whereabouts unknown from September 1997 to February 1998. Since early 1998 the father has been in a series of shelters including the shelter in Danielson where he resided at the time of trial. He was nearing the end of his permitted stay in that shelter and did not offer a specific plan to the court as to where he would live but he was working on locating a residence.
Dr. Ahmad Zubairi of the Connecticut Children's Medical Center, a psychiatrist, did an evaluation of Mary Elizabeth. He found that she was much improved since she had been in her present foster placement. Previously she had been diagnosed with Attachment Reactive Disorder. Now the child merely has anxiety. She has been in the current placement for a period of time and seems to have adjusted well. Although she needs language and CT Page 8832 speech therapy, she is now much more talkative. Her current foster mother, Carmen Perez, has indicated a willingness to adopt her and her brother Michael D. with whom the child has a significant bond. Michael is also doing well in this foster care placement.
Although the father seems to be making some efforts on personal rehabilitation, he has not substantially complied with the expectations set by the court for his reunification. Notwithstanding the court's expectation that he avoid further contact with the criminal justice system, as recently as October 1998 he was convicted of possession of narcotics. During the pendency of these cases he was also convicted of interfering with a police officer and failure to appear.
Mr. D. did see his children at the time of an evaluation with Dr. Freedman. At that time Michael did not recognize his father. Mary Elizabeth did not recognize her father but when he spoke to her she was happy to see him. The foster mother indicates that Mary Elizabeth does not say either nice or bad things about her father. She sometimes says her father isn't sick and, referring to a time when she saw her father in the presence of corrections officers, that he was "in time out." The last time the foster mother saw Mary Elizabeth with her father the visit did not go particularly well.
Mrs. Perez, the foster mother of the two younger children, indicated that Michael has made great progress since he came into her care in August 1998. He was two at the time and had been in three prior foster homes. When he first arrived he fought, cried, and didn't sleep well. He now seems happy and is doing well. She relates that Mary Elizabeth is doing well and has made great progress in her care.
Dr. Freedman concluded, particularly with respect to the two younger children who are at tender ages, that they had already been in placement for longer than recommended by guidelines, that the mother has failed to effectively rehabilitate and reunify with her older children, and that the possibility of her doing so with the younger children was poor. He believed that Mary Elizabeth should not be removed from her current placement, where she is now doing well, because of her history of Attachment Reactive Disorder. He also found that Mr. D. showed signs of an antisocial personality disorder along with drug abuse and criminal behavior. Dr. Freedman related that the father's record CT Page 8833 as a parent and protector of the children early in their lives was poor, his visiting was inconsistent and disruptive to Mary Elizabeth. and he has never shown the ability to establish stability.
The antisocial personality disorder that was referred to as a possible diagnosis by Dr. Freedman was confirmed by the Cedercrest Hospital staff. This disorder along with the multi substance abuse and criminal history, gives Mr. D. an extremely poor prognosis in the future according to Dr. Freedman.
 ADJUDICATION
With respect to the statutory grounds for termination of parental rights to the mother, Marisol R., the court finds by clear and convincing evidence that she has abandoned her children and that she has no ongoing parent-child relationship with the three older children namely Michele R., Desiree R. and Mary Elizabeth D. The court finds that the children have been abandoned by their mother in the sense that she has failed to maintain a reasonable degree of interest, concern or responsibility as to their welfare. C.G.S. § 17a-112(c)(3)(A). The court finds that the petitioner has not satisfied its burden with respect to the abandonment ground as to the father Michael D. and his two children, Mary Elizabeth D. and Michael Joseph D., and therefore the petitions are dismissed as to him on that ground. The court dismissed the petition as to the count of no ongoing parent-child relationship with respect to Michael Joseph D. and his parents. The court finds by clear and convincing evidence that all four children have been previously adjudicated neglected, and that both parents, Marisol R. and Michael D., have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the ages and needs of the children, that either parent could assume a responsible position in the lives of their children. C.G.S. § 17a-112(c)(3)(B).
The grounds found have existed for more than one year.
MANDATORY FINDINGS:
The court makes the following factual findings as required by C.G.S. § 17a-112(e):
1. Appropriate and timely services were either provided by CT Page 8834 the Department of Children and Families or offered to the parents including substance abuse evaluation and treatment referrals to individual counseling, transportation assistance and visitation coordination as well as social work services. Said services were appropriate and, had the parents availed themselves of the services, could have enabled the parents to reunify themselves with their children.
2. The court finds by clear and convincing evidence that the department made reasonable efforts to reunify the family given the parents' level of cooperation and willingness to work with the department. Both parents were parts unknown and/or incarcerated for substantial periods of time. Both parents' lack of initiative to have visitation contributed to their failure to reunify. The father's unwillingness to cooperate with DCF and the services for which he would have received referrals prevented a successful reunification effort. The father's emotional history not only contributed to his unwillingness to work with the department but would have contributed to the likely success or lack of success of such reunification efforts.
3. The department, with the approval of the court, set reasonable and realistic expectations in order to reunify the family as to the father. There has been only minimal compliance by him. He has failed to follow up with recommended drug treatment, there was no evidence presented that he participated in individual counseling in a timely manner such as would have addressed his anger management issues. The father failed in the expectation of securing adequate legal income and housing. He did not comply with the expectation that he avoid contact with the criminal justice system. Because the commitments of the children were entered by default with respect to the mother, no expectations were set, although DCF did offer services to the mother with which she did not successfully participate. She had a history of incarcerations, homelessness and no evidence of any legal income after the commitment of her children.
4. The children have strong emotional ties with the foster families who have provided physical, emotional and educational support of the children's needs. The older two children do not want to be reunified with their mother and wish to stay with their foster mother who is a relative of their father. The younger children have no positive ties or feelings toward their mother. Mary Elizabeth, although she seems to have positive feelings for her father, is very strongly emotionally tied to her CT Page 8835 foster mother and seems to recognize by her statement, "Daddy is in time out," that he is not able to care for her.
5. Regarding the ages of the children Michelle R. is age 12, Desiree R. is age 9, Mary Elizabeth D. is age 4, and Michael Joseph D. will be 3 in August of 1999. Michael has been in foster care all his life and the older children have been in care for almost four years. They deserve a permanent, structured, caring and nurturing environment which the present foster parents are willing to provide on a permanent basis. Neither of the parents is in a position to offer the children a secure home at this time and it is not foreseeable that either would be likely to do so in the near future.
6. Findings regarding the efforts of the parents to adjust their circumstances, conduct or conditions, etc. The parents have not made realistic and sustained efforts to conform their conduct to acceptable parental standards. The mother has abandoned the children and does not appear to have been able to deal with her substance abuse difficulties. She has been incarcerated on a number of occasions during the children's commitment. The father has been incarcerated during the period of the children's commitment as well. It appears that he failed to take advantage of parental programs which would have been offered for his personal rehabilitation while he was incarcerated; although it does appear that he is more successful in dealing with his substance abuse problems. His failure to maintain a relationship with his children on a consistent basis has displaced him as a possible parent figure, particularly because of the Reactive Detachment Disorder which Mary Elizabeth suffers no doubt, in part, because of her father being in and out of her life. To give the parents additional time would not likely bring their performance as parents within even minimally acceptable standards sufficient to make it in the best interest of the children that they be reunited with their parents, In re Luis C.,210 Conn. 157 (1989).
7. Finding regarding the prevention of the parents from having a meaningful relationship, etc. The substance abuse and criminal behavior of the parents has resulted in the present situation. The petitioner did attempt to encourage contact and reunification initially with the parents. With respect to the older three children the department made substantial efforts to avoid their removal from their parent's care. No unreasonable conduct by the department was noted. Both parents were offered CT Page 8836 regular visitation and participated sporadically at best, and in the case of the mother, she largely ignored her visitation opportunities. No conduct by either parent prevented the other from developing a meaningful relationship with the children.
 DISPOSITION
The court, having found that the grounds for termination of parental rights exist and have existed for an extended period of time of greater than one year, based upon the testimony and evidence presented, concludes that it would be in the best interest of the children to terminate the parental rights of Marisol R., the mother of all four children, and Michael D. the father of Mary Elizabeth D. and Michael Joseph D. at this time. This finding is made after considering the children's sense of time, their need for a secure and permanent environment, the relationship that the children have with their foster parents, the lack of the relationship they have with their parents and the totality of the circumstances. In re Juvenile Appeal(Anonymous), 177 Conn. 667-8 (1979).
 ORDER
Accordingly, is ordered that the parental rights of Marisol R. to Michelle R., Desiree R., Mary Elizabeth D. and Michael Joseph D. and the parental rights of Michael D. to Mary Elizabeth D. and Michael Joseph D. are hereby terminated. The Commissioner of the Department of the Children and Families is appointed the statutory parent for all four children.
A permanency plan shall be filed with this court within 60 days and a review plan for terminated child should be filed in accordance with the requirements of state and local law.
C. IAN McLACHLAN JUDGE OF THE SUPERIOR COURT