MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families (DCF).
The respondent, Tammy M., is the biological mother of Alex. On December 8, 1999, the court granted the petitioner's motion to amend and cite in John Doe as the respondent/father of Alex. Respondent/mother was unable to identify who the father of this child is and, therefore, the petitioner provided notice to John Doe by way of publication on October 21, 1999.
PROCEDURAL BACKGROUND
On July 23, 1997, DCF filed a petition alleging Alex was neglected in that the child was being denied proper care and attention physically, educationally, emotionally or morally and the child was being permitted to live under conditions, circumstances or associations injurious to the child's well-being.
On July 23, 1997, the court granted an Order of Temporary Custody with regard to this child.
On August 4, 1998, the court found that Alex was neglected and committed him to the care and custody of DCF.
On April 20, 1999, DCF filed a petition for termination of parental fights of the respondent parents.[2] With regard to Tammy, the petitioner alleged that the child had been found in a prior proceeding to have been neglected and the mother had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child. Conn. Gen. Stat. §17a-112(c)(3)(B)(1).
With regard to the biological father, the petitioner alleged that Alex had been abandoned by his father in the sense that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. Conn. Gen. Stat.
§ 17a-112(c)(3)(A). The petition also alleged that there was CT Page 16025 no ongoing parent-child relationship with respect to the father that ordinarily develops as a result of a parent having met on a day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interest of the child. Conn.Gen. Stat. § 17a-112(c)(3)(D).
On the first day this case was scheduled for trial, both mother and father failed to appear for trial. Mother had actual notice of the proceedings and father, John Doe, had notice pursuant to publication. Both respondents were defaulted for failure to appear at trial.
FACTUAL FINDINGS
The court heard testimony from two witnesses, Dr. Welch and a DCF social worker, and received into evidence various documents.
The court makes the following findings by clear and convincing evidence. Alex was born on December 3, 1996. He has been in the custody of DCF since he was seven months old as the result of an Order of Temporary Custody. The allegations in the neglect petition were that mother gave Alex watered down formula, used toilet paper when she ran out of diapers, did not bath him, gave him over the counter medication to make him sleep and left Alex with inappropriate caregivers.
On August 4, 1998, the child was adjudicated neglected and specific steps were entered for Tammy.
With minor exceptions, mother has failed to follow through with the expectations of the court. She did not keep all of her appointments with DCF and intermittently was whereabouts unknown to DCF.
Tammy did not visit Alex as often as DCF permitted. In 1998 she missed 25 visits and in 1999 she missed 30 visits which was approximately one-half of the scheduled visits. Tammy has not participated in individual or parenting counseling. She has also not secured or maintained adequate housing and income. She was offered the opportunity to reside in My Sister's Place, which is a shelter with a two year program that would have allowed her to live with Alex and be provided with parenting services. She refused this opportunity. She subsequently refused other shelter CT Page 16026 placements offered by DCF. At one point she was residing in a tent with an infant. Mother has not been employed.
In July, 1999, mother was arrested for Breach of Peace.
Mother did complete a DYS life skills program and did participate in psychological evaluations.
Alex's younger sister, Tamara, was born on May 1, 1999. She was recently removed from her mother's care pursuant to an Order of Temporary Custody. When DCF took custody of Tamara, she was filthy and smelled so bad that all her clothes had to be removed and discarded. She had conjunctivitis in both eyes to the point that her eyes were crusted over, and she had a double ear infection. One of the reasons that DCF sought the Order of Temporary Custody was that Tammy had been feeding Tamara watered down cow's milk, just as she had with Alex. As a result, a pediatrician had diagnosed Tamara as a failure to thrive child, and had directed Tammy to follow up with weekly medical appointments for Tamara. Tammy failed to bring the child back to the doctor the very first week she was supposed to do so.
Dr. Welch did several evaluations of Tammy. In a December 4, 1998 evaluation, which was subsequent to the commitment date, he found that "the profile appears to be that of a remarkably naive, nineteen year old woman whose profile is more characteristic of a person half her age. The patient has such flawed judgment that the ability to provide her son a safe and secure environment is in serious question."
ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that this parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. § 17a-112(c)(1). The court need not make such a finding, however, if a court has determined at a hearing pursuant to subsection (b) of Section 17a-110, that such efforts are not appropriate. On February 4, 1999, the court made the requisite finding that further efforts to reunify the respondents with their child were not appropriate. CT Page 16027
B. Statutory Grounds
To prevail in a non-consensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See Inre Michael B., 49 Conn. App. 510, 512 (1998); Conn. Gen. Stat.
§ 17a-112(c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. Practice Book § 33-3(a). The relevant date in this case is April 20, 1999.
FAILURE TO REHABILITATE
"A statutory ground for termination arises when the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen. Stat. §17a-112(c)(3)(B). This statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." In re Luis C.,210 Conn. 157, 167 (1989).
No dispute exists that the court has previously found Alex to have been neglected, thus satisfying a statutory prerequisite. The rest of the statute requires the court to find whether the facts "encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn.Gen. Stat. § 17a-112(c)(3)(B). To be capable of assuming a "responsible position" in a child's life, a parent must be restored "to his or her former constructive role as a parent." Inre Migdalia M., 6 Conn. App. 194, 203 (1986).
The court finds by clear and convincing evidence that Tammy has failed to rehabilitate within the meaning of Conn. Gen. Stat.
§ 17a-112(c)(3)(B). Mother has not taken advantage of the majority of services offered to her. Specifically, she did not enter the shelter program that would have allowed her to live with her child while learning the skills necessary to be a competent parent. She has not engaged in counseling and according CT Page 16028 to Dr. Welch, has such flawed judgment that her ability to provide her son a safe and secure environment is in serious question. Accordingly, the court finds by clear and convincing evidence that Tammy has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in the life of the child.
ABANDONMENT
 Conn. Gen. Stat. § 17a-112(c)(3)(A) provides that a ground for termination exists when "the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child." "Attempts to achieve contact with the child, telephone calls, and the giving of cards and gifts and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re Migdalia M.,6 Conn. App. 194, 208-209 cert. denied, 199 Conn. 809 (1986). "Conversely, where a parent fails to visit a child, fails to display any level of affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209. The statutory term "maintain" implies a "continuing, reasonable degree of concern." Id. at 210.
With regard to John Doe, the court finds by clear and convincing evidence that this father has abandoned Alex. He has had no contact with Alex since the child was born.
NO ONGOING PARENT/CHILD RELATIONSHIP
The petition also alleges that John Doe has no ongoing parent/child relationship that ordinarily develops as a result of the parent having met on a day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such a parent/child relationship would be detrimental to the best interest of the child. Conn. Gen. Stat. § 17a-112(c)(3)(D). The court finds by clear and convincing evidence that there is no ongoing parent/child relationship between John Doe and Alex based on the fact that this father has never had any contact with his child. Additionally, the court finds that to allow further time for the establishment of such a parent/child relationship would be detrimental to the best interest of the child. Alex is now CT Page 16029 three years old. He needs and deserves permanency in his life.
MANDATORY FINDINGS
With respect to the mandatory factual findings required byConn. Gen. Stat. § 17a-112(d) except in the case where termination is based on consent:
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent. The court finds that DCF attempted to facilitate reunion of Alex with his mother and that Tammy did not take advantage of many of the services offered and did not assimilate the services that she engaged in. Additionally, she missed a significant portion of the visitation that was offered to her.
Because DCF was unable to identify the father of Alex and Tammy was not able to identify him either, DCF was unable to make efforts to reunite Alex with his father.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance Child Welfare Act of 1980.
The court finds that DCF offered appropriate and timely services and guidance to Tammy but that she refused the majority of services and did not assimilate the services that she engaged in. Because DCF was unable to identify the father of Alex and mother was not able to identify him either, DCF was unable to make efforts to reunite Alex with his father.
3. The terms of any applicable court order entered in to and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order. As discussed, mother failed to comply with the majority of the expectations that were entered for her. No court orders were entered for John Doe because no one has been able to identify who the father of Alex is.
4. The feelings and emotional ties of the child with respect to his parents, any guardian and any person who has exercised physical care, custody or control of the child for at least one year and for whom the child has developed significant emotional ties. Alex has a visiting relationship with his mother. According CT Page 16030 to a statement made recently by his mother, Alex does not know who she is. Alex has a close relationship with his foster mother. The child has no emotional ties with his father.
5. Age of the child. Alex is three years old.
6. The effort the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (a) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and, (b) the maintenance of regular contact or communication with the guardian or other custodian with the child.
Tammy has made little effort to adjust her circumstances to make it in the best interest of Alex to return home. She does not have stable housing, she has demonstrated an inability to take care of her youngest child, she is not employed, and she is not engaged in counseling.
The father has not come forward and identified himself as the father of Alex. Accordingly, he has made no effort to adjust his circumstances to make it in the best interest of Alex to have a relationship with him.
7. The extent to which a parent has been prevented from maintaining a relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person, or by economic circumstances of the parent. Tammy and John Doe did not face unreasonable interference from anyone.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child."Conn. Gen. Stat. § 17a-112(c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
The court finds by clear and convincing evidence that termination of Tammy and John Doe's parental rights are in the CT Page 16031 best interests of Alex. Mother did not appear for trial, has been sporadic in her visitation with the child and has failed to take advantage of the majority of services offered by DCF to help her rehabilitate as a parent.
Counsel for mother made much of the fact that she had completed a life skills course. The issue, however, is not attendance but instead, whether Tammy learned from the services provided to her and addressed her behavioral deficiencies. The fact that Tammy has recently lost custody of her youngest child, Tamara, for some of the exact same reasons as Alex was found neglected, demonstrates that mother did not benefit from the life skills program.
John Doe has never had any involvement in the child's life. For all these reasons, the court determines that it is in Alex's best interests for a termination of parental rights to enter with respect to Tammy M. and John Doe. Accordingly, a termination of parental rights is ordered. It is further ordered that the Commissioner of DCF be appointed statutory parent for Alex for the purpose of securing an adoptive home. The Commissioner shall file with the court no later than 60 days following the date of judgment, a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
CHASE T. ROGERS JUDGE OF THE SUPERIOR COURT