MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families ("DCF"). The respondent, Margarita S. is the biological mother of all of the children. The respondent, Edwin A., is the biological father of Angelica, Ana and Edwina. The respondent, Edwin S., is the biological father of Edwin. The respondent, Benjamin F., is the biological father of Benjamin and Belinda. CT Page 3036
PROCEDURAL BACKGROUND
On October 16, 1995, DCF filed neglect petitions alleging that Edwin, Benjamin, Belinda, Angelica and Ana were neglected in that the children were being denied proper care and attention, physically, educationally, emotionally or morally and that the children were being permitted to live under conditions, circumstances or associations injurious to their well-being.Conn. Gen. Stat. § 46b-120(8)(B)(C).
On October 16, 1995, the court granted an order of temporary custody with regard to all five children.
On June 12, 1996, the court adjudicated the children uncared for and committed them to the care and custody of DCF.
On August 15, 1996, Edwina was born. On June 3, 1997, DCF filed a neglect petition alleging that Edwina had been neglected in that she was being denied proper care and attention, physically, educationally, emotionally or morally and that she was being permitted to live under conditions, circumstances or associations injurious to her well-being. Conn. Gen. Stat. §46b-120(8)(B)(C).
On June 3, 1997, the court granted an order of temporary custody with regard to Edwina.
On November 12, 1997, the court adjudicated Edwina neglected and uncared for and committed her to the custody of DCF.
On May 28, 1998, the court found that continuing efforts to reunite the family were no longer appropriate with regard to all of the respondents.
On December 17, 1998, DCF filed a petition for termination of parental rights of all the biological parents. With regard to Margarita, the petitioner alleged that the children had been found in a prior proceeding to have been neglected and the mother had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the needs and age of the children, she could assume a responsible position in the life of the children. Conn. Gen.Stat. § 17a-112(c)(3)(B). The petitioner also alleged that there is no ongoing parent/child relationship with the mother CT Page 3037 that ordinarily develops as a result of a parent having met on a continuing basis the physical, emotional, moral, For educational needs of the children and to allow further time for the establishment or reestablishment of such parent/child relationship would be detrimental to the best interest of the children. Conn. Gen. Stat. § 17a-112(c)(3)(D). The petitioner also alleged that the children had been abandoned in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen. Stat. § 17a-112(c)(3)(A).
With regard to Edwin A., the father of Angelica, Ana and Edwina, the petitioner alleged that there is no ongoing parent/child relationship with the father that ordinarily develops as a result of a parent having met on a continuing basis the physical, emotional, moral, or educational needs of the children and to allow further time for the establishment or reestablishment of such parent/child relationship would be detrimental to the best interest of the children. Conn. Gen.Stat. § 17a-112(c)(3)(D). The petitioner also alleged that the children had been abandoned in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen.Stat. § 17a-112(c)(3)(A).
With regard to Edwin S., the father of Edwin, the petitioner alleged that there is no ongoing parent/child relationship with the father that ordinarily develops as a result of a parent having met on a continuing basis the physical, emotional, moral, or educational needs of the child and to allow further time for the establishment or reestablishment of such parent/child relationship would be detrimental to the best interest of the child. Conn. Gen. Stat. § 17a-112(c)(3)(D). The petitioner also alleged that the child had been abandoned in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. Conn.Gen. Stat. § 17a-112(c)(3)(A).
With regard to Benjamin F., the father of Benjamin and Belinda, the petitioner alleged that there is no ongoing parent/child relationship with the father that ordinarily develops as a result of a parent having met on a continuing basis the physical, emotional, moral, or educational needs of the children and to allow further time for the establishment or reestablishment of such parent/child relationship would be detrimental to the best CT Page 3038 interest of the children. Conn. Gen. Stat. § 17a-112(c)(3)(D). The petitioner also alleged that the children had been abandoned in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen. Stat. § 17a-112(c)(3)(A).
On January 4, 2000, Benjamin F., voluntarily consented to termination of his rights and the court entered an order terminating his parental rights with regard to Benjamin and Belinda.
On the first day of trial, after the initial witness testified, Edwin S. voluntarily consented to termination of his rights and the court entered an order terminating his parental rights with regard to Edwin.
Mother did not appear for trial on February 29, 2000, despite having notice of the proceedings and having counsel appointed for her. Counsel for mother cross-examined witnesses called by the other parties.
For the reasons stated below, the court hereby terminates the parental rights of Margarita S. and Edwin A.
FACTUAL FINDINGS
The court makes the following findings by clear and convincing evidence.
In 1995, Edwin, Benjamin, Belinda, Angelica and Ana were removed from the home of Margarita and her boyfriend, Edwin A., because of physical abuse of Edwin, domestic violence and drug abuse. On one occasion, Edwin had been hit over the head with a pistol by Edwin A. so hard that he required twenty stitches. On another occasion, Edwin A. had knocked out Margarita's teeth in the presence of the children.
Edwina was born on August 15, 1996. This child was allowed to go home with Margarita. Between September 19, 1996 and March 13, 1997, Margarita missed ten appointments with the parent aide who had been referred by DCF. The parent aide program closed its case on March 25, 1997, due to difficulties with mother keeping appointments.
On February 28, 1997, Belinda, Angelica and Ana were placed CT Page 3039 with their mother pursuant to a court order while still committed to DCF. They were removed again from the mother's home on May 26, 1997 due to physical neglect, inadequate supervision and physical abuse. For unknown reasons, Edwina was not removed at the same time. On May 31, 1997, Edwina was finally removed from her mother's care because Margarita stated that she was not capable of caring for the child.
Margarita was referred to multiple services by DCF. While she was initially compliant with counseling in 1995, when she was re-referred for individual counseling in March of 1998, she failed to attend any sessions. In 1998, she was referred to Catholic Family Services for parenting skills training but did not follow through on this referral. Margarita also failed to attend drug evaluations in 1997 and 1998.
In October of 1997, three psychological evaluations were scheduled for mother. She did not keep any of her appointments.
Margarita was arrested on October, 9, 1997 and was incarcerated until November 3, 1997. Prior to her arrest she was homeless due to being evicted from her apartment for non-payment of rent.
Margarita missed eighteen visits with her children in 1997 including the last two visits scheduled for December of 1997. She then missed the first four visits that were scheduled in 1998. DCF subsequently decided to stop visits between Margarita and her children because of the trauma inflicted on them when she failed to appear for the visits.
Margarita last had contact with her children in November of 1997 and has not sent them any cards or letters or acknowledged any special occasions such as birthdays.
As recently as July of 1999, during a court ordered evaluation, Margarita minimized the abuse and neglect that she and Edwin had inflicted on her children and continued to assert that she was not in need of any services.
EDWIN A.
While he was living with Margarita, Edwin A. physically abused Edwin, including pistol whipping the child. He also engaged in ongoing domestic violence with Margarita. On one occasion he knocked her teeth out and during another incident he stabbed her. CT Page 3040 He also has a long history of drug abuse.
At the time the children were removed pursuant to an OTC in 1995, Edwin A. was hiding from police to avoid sentencing on outstanding charges and living under an alias. The record is unclear whether he had any contact with the children between October 1995 and October 1996 when he was apprehended and sentenced.
On October 26, 1996, two months after Edwina was born, he was sentenced to seven years incarceration on drug charges. While incarcerated, he has completed tier one and two of the drug abuse program. He has not engaged in individual or domestic violence counseling.
During trial Edwin A. testified that he never knocked Margarita's teeth out, instead claiming that a dentist pulled out her teeth. He also testified that he was not violent with Margarita or Edwin. The court does not find this testimony credible, especially given that both mother and Edwin stated that he had engaged in these acts.
Edwin also testified that he does not see any need for anger management classes.
Edwin's earliest parole date is August 2000 and his earliest discharge date is October 2001. Edwin has been involved in fights and has violated the prison rules while incarcerated. He has received disciplinary measures as a result of his conduct.
After DCF was granted custody, Edwin A. requested visitation with Edwina only.[2] DCF initially declined to allow visitation because of the trauma he had inflicted on the children as a result of his violent acts. On July 9, 1997, the court ordered that Edwin was to have at least one visit with Edwina within the next month. DCF did not arrange any further visits after the one visit was provided in prison.
Edwin did not send Angelica, Ana or Edwina any cards or gifts and did not acknowledge any special events such as their birthdays or holidays.[3]
THE CHILDREN
Edwin has been in multiple foster homes since he was removed CT Page 3041 from his mother's home in 1995. He has been diagnosed as a child abuse victim, with Disruptive Behavior Disorder, and Depressive Disorder. He is currently in a therapeutic foster home. The foster parents wish to adopt Edwin and he would like to be adopted by them. Edwin has described living with his mother as "bad" but from time to time has expressed a desire to be with her.
Benjamin and Belinda, who are twins, have also been in multiple foster homes. They are currently placed with their paternal grandmother who would like to adopt them. They are bonded with their grandmother and would like to be adopted by her. Benjamin and Belinda have no present memories of their mother. She has not visited with them since November of 1997.
Angelica is in a specialized pre-adoptive home placed with the daughter of the foster mother who is caring for Edwina and Ana. All of the girls are able to visit with each other on a regular basis and will continue to do so. Angelica is bonded with her foster mother and would like to be adopted by her. Angelica has negative memories of Edwin A. engaging in violence. She has no present memories of her mother.
Ana is placed in a pre-adoptive foster home with her sister Edwina. She has no present memories of her mother or father.
Edwina has been in foster care since she was ten months old. Based on decisions that Edwin A. made to engage in illegal conduct, her father has been incarcerated since she was two months old. Based on decisions made by DCF, she has had only one visit with him during that time. Edwina is now three and a half years old. She has no present memories of her mother or father. Edwina's foster family would like to adopt her and her sister Ana.
ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF has "made reasonable efforts to locate the parent and reunify the child with the parent unless the court finds in the proceeding that the parent is unable or unwilling to benefit from reunification efforts."Conn. Gen. Stat. § 17a-112(c)(1). The court need not make CT Page 3042 such a finding, however, "if a court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b
that such efforts are not appropriate." Id.
The court made the requisite finding on May 28, 1998, that reunification efforts were no longer appropriate with regard to all of the biological parents.
TERMINATION ADJUDICATION
A termination petition that can sever family ties implicates serious constitutional concerns. The United States Supreme Court held in Santosky vs. Kramer, 455 U.S. 745, 753 (1982) that: "the fundamental liberty interests of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents where they have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life."
However, parents' constitutional rights do not exist in a vacuum without reference to the rights of others in the family. In particular, they do not override a child's right to be safe and to grow and to be nurtured in a supportive environment. As set forth in Conn. Gen. Stat. § 17a-101(a): "the public policy of this state is: to protect children whose health and welfare may be adversely affected through injury and neglect."
STATUTORY GROUNDS
To prevail in a non-consensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See Inre Michael B., 49 Conn. App. 510, 512 (1998); Conn. Gen. Stat.
§ 17a-112(c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a). The relevant date in this case is December 17, 1998.
FAILURE TO REHABILITATE
A statutory ground for termination arises when "the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would CT Page 3043 encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life "of the child." Conn. Gen. Stat.
§ 17a-112(c)(3)(B). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child and further, that such rehabilitation must be foreseeable within a reasonable time." In re Luis C.,210 Conn. 157, 167 (1989).
No dispute exists that the court has previously found all of the children to have been "neglected" or "uncared for" thus satisfying a statutory prerequisite. The rest of the statute requires the court to find whether the facts "encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen. Stat. §17a-112(c)(3)(B). The court finds by clear and convincing evidence that the respondent, Margarita, has failed to rehabilitate within the meaning of the statute.
Margarita missed eighteen visits in 1997 and specifically the last two visits scheduled in 1997. She then missed the first four visits scheduled for 1998. She has not seen or had contact with her children since November of 1997. She has not sent the children cards, letters or gifts. It is fundamental that a parent must demonstrate the ability to be consistent in her contact with her children in order to prove rehabilitation to the status of a responsible parent. If a parent cannot even make it to scheduled visits, or chooses not to, she is clearly not prepared to care for the children on a regular basis with or without services.
Margarita has also not followed through with the services that she was referred to in 1998, including counseling and drug screens. As of the relevant adjudicatory date, she had also not secured adequate housing. Finally, Margarita was given the opportunity to try and again parent her children, first when Edwina was allowed to go home with her after she was born and then when Belinda and Benjamin were placed with her between February and May of 1997. The children again had to be removed due to substantiated neglect and abuse. For all these reasons, the court finds by clear and convincing evidence that Margarita has failed to rehabilitate within the meaning of the statute.
ABANDONMENT
CT Page 3044
The petition alleges that all of the children have been abandoned by their mother and father "in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." Conn.Gen. Stat. § 17a-112(c)(3)(A). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re Migdalia,6 Conn. App. 194, 208-209, cert. denied, 199 Conn. 309 (1986). "Conversely, where a parent fails to visit a child, fails to display any level of affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209.
Margarita has abandoned her children. She chose to miss so many scheduled visits with the children that ultimately DCF ceased the visitation because of the trauma that she was causing to the children as a result of her failure to attend the visits. She has not had contact with the Department since May of 1998 to inquire about the welfare of her children. She has not attempted to contact the children, send them cards or gifts or provide any financial support as of the relevant adjudicatory date of December 17, 1998.
For all these reasons, the court finds by clear and convincing evidence that Margarita has abandoned her children.
The court finds by clear and convincing evidence that Edwin A. has also abandoned Angelica, Ana and Edwina in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen.Stat. § 17a-112(c)(A).
"Abandonment focuses on the parent's conduct." In re JuvenileAppeal, Conn. 11, 14 (1981). There are five commonly understood general obligations of parenthood: "(1) express love and affection for the child: (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." Id.
This court is mindful of the language in In re Juvenile Appeal,187 Conn. 431, 443 (1982), that imprisonment alone does not CT Page 3045 constitute abandonment. A close reading of this case, and the cases cited therein to support this proposition, make clear, however, that while incarceration per se is not sufficient to constitute abandonment, it should also not foreclose the possibility of making such a finding. The voluntary illegal acts that lead to a period of separation of the parent from the child can and should be considered as a factor in determining whether or not there has been abandonment. In re Juvenile Appeal, supra, at 442. Just as in all abandonment cases, the court should also consider in the case of an incarcerated parent, what efforts the parent has made to maintain contact with the child, express love and affection for the child, express concern regarding the well-being of the child, provide financial assistance if possible and furnish appropriate religious and social guidance.
With regard to Angelica and Ana, Edwin A. did not seek visitation with these children and did not attempt to contact them, send them cards or gifts or provide any financial support. He only wrote one letter to DCF regarding the possibility of placing the children with a relative. A showing of sporadic interest in the children is insufficient to defeat a claim of abandonment. In re Migdalia, supra at 210. Through his voluntary illegal conduct, he also did not furnish appropriate religious or social guidance.
With regard to Edwina, Edwin has voluntarily engaged in criminal behavior which has resulted in his being unavailable to parent this child for the first three years and ten months of her life and quite possibly longer. While the court finds credible Edwin's testimony that he was prevented from visiting with Edwina by DCF, the court also finds that he did not attempt to keep in contact with her through cards, letters or pictures, did not provide any financial support, did not furnish appropriate religious or social guidance and only expressed concern regarding her welfare on one occasion.
The court expressly finds that while Edwin's incarceration alone did not cause the abandonment, his conduct which resulted in a separation of many years from his children as well as his conduct post incarceration was of such a magnitude as to abdicate his responsibility as to the welfare of the children.
For all these reasons, the court finds by clear and convincing evidence that Edwin A. has abandoned his children in that his conduct constituted "such conscious disregard and indifference to CT Page 3046 his parental obligations as to evince a settled purpose to forego his obligation and duties to his child." In Re Juvenile Appeal,187 Conn. 431, 444 (1982).
NO ONGOING PARENT/CHILD RELATIONSHIP
Petitioner also alleges that Margarita and Edwin have no ongoing parent/child relationship with their children that ordinarily develops as the result of the parent having met on a day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such a parent/child relationship would be detrimental to the best interest of the child. Conn. Gen. Stat. § 17a-112(c)(3)(D). The Connecticut Supreme Court in In re Jessica M., 217 Conn. 459 (1991) found that termination on these grounds is inappropriate unless "the child has no present memories or feelings for the natural parent" or that if such child does have some memories, "no positive emotional aspects of their relationship survive." Id.
at 468.
The Connecticut Supreme Court has also held that when a child has never had an opportunity to develop a relationship with a parent because of a prior custody decision, termination is improper on the grounds of lack of an ongoing parent/child relationship. In re Valerie D., 223 Conn. 492, 535 (1992).
With regard to Margarita, Edwin had mixed feelings about her as of the date the termination petition was filed. It appears that some positive emotional aspects of their relationship still existed and therefore DCF has not proven by clear and convincing evidence that no ongoing parent/child relationship existed as of the relevant adjudicatory date.
With regard to Benjamin, Belinda, Angelica, Ana and Edwina, the children have no present memories of their mother. Unlike inValerie D., supra, these children had the opportunity to develop a relationship with their mother, and had memories of their mother, before they were placed in foster homes. The court can certainly envision a set of facts satisfying the statutory requirements for a finding of no ongoing parent/child relationship when an older child, who has a relationship with a parent prior to going into custody, subsequently has no memories of the parent because the parent failed to maintain contact with the child. In this case, however, the petitioner failed to CT Page 3047 present sufficient evidence to prove that the children have no ongoing relationship with their mother because of her failure to visit them as opposed to the initial decision by the court to place the F children in custody and the later decision by DCF to not allow visitation. Because petitioner has not met its burden of proof, this ground of the petition is dismissed.
With regard to Edwin A., Angelica has very negative memories of her father because of the violence he inflicted in the home. The court therefore finds that no positive emotional aspects of their relationship survive and that this is the result of Edwin's conduct and not the direct result of the decision to place the child in foster care. The court also finds that it would not be in Angelica's best interest to allow further time to allow such a relationship to develop. Edwin is still incarcerated and Angelica is in foster care with a family that wants to adopt her. The court therefore finds by clear and convincing evidence that no ongoing parent/child relationship exists between Angelica and Edwin.
With regard to Ana, insufficient evidence was presented as to whether her lack of any memories is due to her placement in foster care or her father's subsequent incarceration and failure to seek visitation with her. With regard to Edwina insufficient evidence was presented as to whether the lack of an ongoing relationship was due to her father's incarceration or her subsequent placement in foster care. Accordingly, the petitioner has not sustained its burden of proof with regard to establishing the lack of a parent/child relationship between Edwin and his two youngest girls, Ana and Edwina.
MANDATORY FINDINGS
With respect to Margarita and Edwin, as required by Conn. Gen.Stat. § 17a-112(d), the court makes the following findings:
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
DCF referred Margarita to numerous services to help address her parenting deficiencies. These services were highly relevant to the needs of Margarita and were offered in a timely manner.
Edwin was incarcerated from October 1996 until the present. CT Page 3048 Therefore there were no services that could be offered by DCF. It did discuss with him his need to take advantage of programs while in prison.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance Child Welfare Act of 1980.
DCF offered Margarita appropriate and timely services and guidance, and more than sufficient time to permit family reunification.
Given that Edwin was initially whereabouts unknown and then incarcerated for the majority of time the children have been in custody, DCF was not in a position to offer services to aid with reunification.
3. The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
Margarita and Edwin were given steps by the court on June 3, 1997. Margarita failed to comply with the majority of steps and failed to benefit from the services that she did engage in. Edwin did not engage in individual or anger management counseling. He has received substance abuse treatment while incarcerated.
4. The feelings and emotional ties of the child with respect to his parents, any guardian and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
All of the children are bonded with their foster parents. Edwin has mixed emotional feelings about his mother. Benjamin, Belinda, Ana and Edwina have no present memories of their mother or father. Angelica has negative memories of her father and no present memories of her mother.
5. The ages of the children.
Edwin is eleven years old. Benjamin and Belinda are ten years old. Angelica is seven years old. Ana will be six years old next month. Edwina is three years old. CT Page 3049
6. The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, and not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and, (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Margarita and Edwin have made little if any effort to adjust their circumstances to make it in the best interest of the children to return home.
7. The extent to which a parent has been prevented from maintaining a relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person, or by economic circumstances of the parent.
Neither parent was prevented by any unreasonable acts from maintaining a relationship with the children.[4]
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child."Conn Gen. Stat. § 17a-112(c)(2). The court can consider all events occurring through the close of the dispositional hearing. Connecticut Practice Book 33-5. The oldest five children have been in foster care for four and one half years. Edwina has been in foster care for almost three years. Edwin A. is still incarcerated and will not be available to the children for a long time.[5] Margarita has not rehabilitated and is not currently engaged in any services. All the children are bonded with their foster parents who are willing to adopt them. These children are in need of permanency and the court determines by clear and convincing evidence that it is in their best interest for a termination of parental rights to enter with respect to their biological parents. Accordingly, a termination of Margarita and Edwin A.'s parental rights is ordered. It is further ordered that the Commissioner of DCF be appointed statutory parent for Edwin, Benjamin, Belinda, Angelica, Ana and Edwina for the purpose of CT Page 3050 securing adoptive homes. The Commissioner shall file with this court, no later than 60 days following the date of judgment, a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
[2] The court finds the DCF workers' testimony that Edwin sought visitation with Edwina only, and not Angelica or Ana, more credible than Edwin's testimony that he never indicated that he did not want to visit with Angelica or Ana, especially in light of the court's order to allow at least one visit with Edwina.
[3] The court finds the DCF worker's testimony that father did not send any cards or gifts more credible than Edwin's testimony that he did send approximately twenty to thirty cards.
[4] While DCF probably should have provided more than one visit between Edwin and Edwina pursuant to the court order, no relationship already existed between the parent and child prior to this decision being made.
[5] Interestingly, while father, when questioned, lacked the insight to recognize that it might be in the children's best interest to stay in the foster homes they are currently in, he did recognize it would take a long time for him to develop a relationship with the children after he is released from prison.