IN RE LUIS C.*
(13452)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued December 9, 1988—decision released February 21, 1989

*Lynn B. Cochrane,* with whom was *Judith Solomon,* for the appellant (respondent mother).

*Judith Merrill Earl,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attor-

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

ney general, and *Robert W. Garvey,* assistant attorney general, for the appellee (petitioner).

*Antoinette Leone Ruzzier,* for the minor child.

GLASS, J. This is an appeal by the respondent, Elba M., from the judgment of the trial court terminating her parental rights to Luis C., her son, pursuant to General Statutes § 17-43a (b) (2) and (4).[1] On appeal, the respondent claims that the trial court erred in concluding that she had failed to achieve a degree of personal rehabilitation that would allow her to assume a responsible position in the child's life. She also claims that General Statutes § 17-43a (b) (4) violates the due process clauses of the Connecticut and United States constitutions. We find no error.

As a result of allegations that Luis had been physically abused, on April 2, 1982, the department of children and youth services (DCYS) filed a petition in the trial court alleging that Luis was a neglected child. Luis was eighteen months old at the time the petition was filed. Pursuant to an order of temporary custody, Luis, whose biological parents were Hispanic, was taken into custody by DCYS, and was placed in the home of non-

---

[1] General Statutes § 17-43a (b) provides in pertinent part: "The superior court upon hearing and notice . . . may grant such petition [to terminate parental rights] if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child . . . or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."

Hispanic foster parents in May, 1982. Luis has been in their care since that time. Following a hearing on the petition, the trial court on September 9, 1982, adjudicated Luis a neglected child because of parental abuse, and committed him to the care and custody of the commissioner of DCYS for a period up to eighteen months.[2] With the respondent's agreement, Luis's commitment to DCYS was extended for a period of eighteen months in February, 1984, and for an additional eighteen months in August, 1985.

On October 23, 1986, the commissioner of DCYS filed a petition to terminate the parental rights of the respondent and Victor, Luis's father. The commissioner alleged that Victor had abandoned Luis,[3] and that the respondent's parental rights to Luis should be terminated on the basis of § 17-43a (b) (2) and (4). Section

---

[2] The court on September 9, 1982, issued additional orders, providing for the mother to visit the child regularly, to participate in child counseling and parenting skills programs, and to maintain adequate housing.

[3] The abandonment allegation was based on General Statutes § 17-43a (b) (1) which provides: "The superior court upon hearing and notice . . . may grant such petition [to terminate parental rights] if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."

Regarding the father the trial court stated: "No services could be offered to the father [by DCYS] who failed to maintain contact with DCYS," and "[t]he father has made no observable effort to adjust his circumstances, conduct or condition to make it in the best interests of Luis to return to his parents in the foreseeable future." "The father last attended court on the initial commitment hearing on September 9, 1982, when he acknowledged in writing the expectations of the court. The father last saw his son in April, 1982, and has had no further contact. The father has disappeared from his son's life. The mother admits in her answer that Victor has abandoned the child without visitation since commitment." The trial court concluded: "As of October 21, 1986, father has abandoned his son by the test of Section 17-43a (b) (1)." Accordingly, the parental rights of Victor to Luis were terminated, and Victor has not appealed from the court's adjudication.

§ 17-43a (b) (2) provides that the trial court may grant a petition to terminate parental rights based upon proof by clear and convincing evidence that the parents of a child, previously adjudicated by the Superior Court to be neglected, have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the child's age and needs, they could assume a responsible position in the child's life. Section 17-43a (b) (4) provides that parental rights may be terminated if by clear and convincing evidence it is proven that there is no ongoing parent-child relationship.[4]

In March and April, 1986, the trial court conducted a hearing on the commissioner's petition to terminate the respondent's parental rights to Luis. The trial court heard testimony from several counselors who had worked with Luis and the respondent. Louise Leavenworth, a social worker, testified that she observed twenty-three visits by the respondent with Luis during the period from December, 1984, to July, 1986. She testified that she found very little interaction initiated by the mother with Luis, and that Luis reacted negatively toward his mother. Leavenworth testified that Luis had become concerned about the court proceeding and where he was going to live. She further testified that adoption by the foster parents would have a positive influence on Luis and that a reunification with his mother would be negative. She concluded that no meaningful relationship between Luis and his mother would be likely to develop.

The respondent engaged in counseling at two separate facilities beginning in 1982. In October, 1982, she was referred by DCYS to Hartford Community Health Services for parenting skills counseling. The scheduled weekly sessions were discontinued in May, 1983, because of her absences. The substance of the testimony

---

[4] See footnote 1, supra.

of her counselor from Hartford Community Health Services was that the respondent did not experience any substantial increase in parenting skills as a result of the sessions. In 1984, the respondent began counseling with the Institute for the Hispanic Family, initially for the purpose of dealing with the respondent's problems of getting independent housing, reunification with Luis and parenting of her newborn child, Carlos. The main efforts of this counseling activity were directed toward Carlos, who had been a difficult child to raise. The respondent's counselor, Gloria Gerena, testified that she observed a visit between the respondent and Luis in November, 1985. She described the visit as friendly and not negative, but that Luis treated the respondent as a friend and not as his mother. Gerena also testified that, based on her work with the respondent over a two and one-half year period, it was her opinion that the respondent had the "potential" to develop adequate parenting skills.

Pursuant to the trial court's order, in September, 1985, Dr. Julia Ramos-McKay, a psychologist, performed an evaluation of the respondent, the foster mother and Luis. She testified that the respondent's and Luis's relationship was "friendly" but was not that of a mother and child. She further testified that Luis's foster mother was the child's "psychological" parent, and that Luis referred to his foster mother as "Mom." Ramos-McKay suggested that, as of September, 1985, the respondent may not have had command of common parental techniques. Dr. Henry Kranzler, a specialist in cultural psychiatry, testified for the respondent. Kranzler was unable to render a definitive opinion on whether it would be possible to reunite the respondent and Luis in the future. He also testified that it would be "disastrous" for Luis to return to an Hispanic cultural environment in light of the fact that Luis had spent the previous four and one-half years in an Anglo-American environment with his foster parents.

The trial court also heard testimony that, at the time of DCYS' initial involvement with Luis in connection with the original abuse allegation, the respondent lived on Groton Street in Hartford. Thereafter, she moved to Vine Street. She was evasive about her other residences. Housing had been difficult to obtain because of a lack of housing units and a lack of money. Gerena, one of the respondent's counselors, contacted the Hartford Housing Authority on behalf of the respondent and furnished other housing leads to her. At the time of the termination hearing, the respondent had an apartment in the Charter Oak public housing project, but according to Gerena, the street on which the respondent lived was considered the worst street in the project because of a high crime rate.

Luis, who was almost seven years old at the time of the termination hearing, did not testify. The trial court found that the parties had stipulated that Luis loved his foster parents, considered them to be his mother and father, and wanted to live with them and not the respondent. The trial court determined that because Luis has grown up as a non-Hispanic child in the foster home, his relationship to his Hispanic mother had suffered, that the difference in cultures between mother and child adversely affected their relationship, and that Luis's return to an Hispanic culture after this stay in the Anglo-American foster home would be disastrous. The trial court further found that the respondent's visits with her son at his foster home had not been productive. The visits caused Luis to experience tension and anxiety. Following the respondent's visits, Luis experienced nightmares, maladjustment at school, mood changes and bed wetting. A pediatric nurse and a kindergarten teacher confirmed Luis's negative reaction to the respondent's visits. The trial court sanctioned the cessation of the respondent's visits in January, 1986, and thereafter Luis no longer suffered

from the negative reactions identified as having been caused by the respondent's visits. The trial court further found that the respondent's parenting skills were deficient and that her relationship with Luis had suffered because of this deficiency.

Pursuant to General Statutes § 17-43a (d),[5] the trial court, in its memorandum of decision, made specific findings regarding the six statutory factors necessary for consideration in a proceeding to terminate parental rights. While many of these findings are evident from our recitation of the facts, for emphasis, we will recapitulate those findings here. The court found that the counseling services provided to the respondent had little effect in improving her parenting skills. It also found that the respondent had displayed little dedication to meeting obligations that she had agreed to, such as maintaining contact with DCYS and attending

[5] General Statutes § 17-43a (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

parenting skills programs. It further found that Luis, who was six years of age at the time of the termination hearing, had bonded with his foster parents, and that the respondent had made only limited efforts to adjust her conduct and circumstances so that Luis's return to live with her would be in his best interests. It also found that the respondent's efforts to maintain a meaningful relationship with Luis had not been interfered with by any other person. Accordingly, the trial court found that the evidence was clear and convincing that the respondent had failed to achieve the necessary level of rehabilitation required under § 17-43a (b) (2) and that there was no ongoing parent-child relationship as provided by § 17-43a (b) (4). The trial court also concluded that the evidence was clear and convincing that it was in Luis's best interests to grant DCYS' petition to terminate the respondent's parental rights.

I

The respondent's principal claim is that the trial court erred in finding by clear and convincing evidence that she had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of her child, she could assume a responsible position in his life. General Statutes § 17-43a (b) (2).

"The termination of parental rights is defined as 'the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . .' General Statutes § 17-32a (e) (Rev. to 1972) [now § 45-61b (g)]. Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' *Stanley*

v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 [1972]; see *In re Appeal of Kindis,* 162 Conn. 239, 240, 294 A.2d 316 [1972]; *Cinque* v. *Boyd,* [99 Conn. 70, 82, 121 A. 678 (1923)]." *Anonymous* v. *Norton,* 168 Conn. 421, 425, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). Termination of parental rights is "a most serious and sensitive judicial action." Id., 430.

"Section 17-43a carefully sets out . . . four situations that, in the judgment of the legislature, constitute 'countervailing interests' sufficiently powerful to justify the termination of parental rights in the absence of consent. The commissioner of children and youth services, in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and in fact usually dictate the outcome, in termination proceedings the statutory criteria must be met before termination can be accomplished and adoption proceedings begun. No all-encompassing 'best interests' standard vitiates the requirement of compliance with the statutory criteria. See *Alsager* v. *District Court of Polk County,* [406 F. Sup. 10 (S.D. Iowa 1975), aff'd, 545 F.2d 1137 (8th Cir. 1976)]; *In re Adoption of Children by D.,* 61 N.J. 89, 293 A.2d 171 (1972); *Malpass* v. *Morgan,* 213 Va. 393, 192 S.E.2d 794 (1972); Ketcham & Babcock, 'Statutory Standards for the Involuntary Termination of Parental Rights,' 29 Rutgers L. Rev. 530, 539 (1976); comment, 'Termination of Parental Rights in Adoption Cases: Focusing on the Child,' 14 J. Fam. L. 547, 550 (1975)." *In re Juvenile Appeal (Anonymous),* 177 Conn. 648, 671–72, 420 A.2d 875 (1979).

The respondent mounts a three pronged attack on the trial court's decision granting the petition to terminate her parental rights to Luis. She argues that the

evidence adduced at the hearing showed that she did in fact successfully rehabilitate herself to the extent that, with some supportive counseling services, she currently could be a responsible parent to Luis. She also maintains that the trial court narrowly and improperly construed the term "rehabilitation" under § 17-43a (b) (2) and further, that the court based its decision in part on factors for which the respondent was not responsible. She maintains, therefore, that the trial court's determination that the evidence was clear and convincing that the respondent had failed to rehabilitate herself was clearly erroneous. We are not persuaded.

A determination by the trial court under § 17-43a (b) (2) that the evidence is clear and convincing that the parent has not rehabilitated himself or herself will be disturbed only if that finding is "not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *In re Juvenile Appeal (84 – 3),* 1 Conn. App. 463, 478, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). In the present case, the trial court's findings, which are amply supported by the record, indicate that the respondent's visits with Luis were not productive toward maintaining or reinforcing a parent-child relationship, that Luis reacted negatively toward her, that the progress the respondent had made in improving her parenting skills with respect to Luis was unpromising, that the prospects of the respondent achieving a useful and constructive role as a parent to Luis were crucially impaired by language and cultural barriers, that Luis had psychologically bonded with his foster parents with whom he had lived for the last five years of his almost seven year life, and that the respondent continued to have difficulty in obtaining adequate housing. Moreover, the trial court found that DCYS had made reasonable efforts to reunify the respondent

with Luis. In light of these findings as supported by the record, we are not persuaded that the trial court was clearly erroneous in concluding that the evidence clearly and convincingly demonstrated that the respondent had failed to achieve a level of rehabilitation that would encourage the belief that, within a reasonable time, considering Luis's age and needs, the respondent could assume a responsible position in Luis's life. General Statutes § 17-43a (b) (2).

The respondent argues, however, that the term "rehabilitation," as used in § 17-43a (b) (2), does not require the parent to be able to assume full responsibility for a child without the use of available support programs. She also claims that her failure to fulfill all court expectations does not equate with a conclusion that she could not assume a responsible position in the child's life. See *In re Migdalia M.,* 6 Conn. App. 194, 203, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986); *In re Juvenile Appeal (84 – 3),* supra. We have no quarrel with the propositions to which the respondent alludes. We note, however, that as it is presently written, § 17-43a (b) (2) requires parental rights to be terminated if by clear and convincing evidence it is established that the respondent's level of rehabilitation falls short of the level which would "encourage the belief that *within a reasonable time, considering the age and needs of the child,"* the parent could assume a responsible position. (Emphasis added.) Thus, the statute requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable "within a reasonable time." There may be instances in which the evidence does not establish that parental rights should be terminated under this section, despite the fact that continuing support programs for the parent may be suitable or even necessary. The trial court in the

present case, however, determined that, with regard to Luis's age and needs, the respondent had not been rehabilitated. Further, the record discloses that the trial court based its conclusion on a plenary consideration of the factors identified in § 17-43a (d), and did not grant the petition to terminate the respondent's parental rights solely on the basis of the respondent's failure to abide consistently by agreements entered into with the court.

The respondent also suggests that the trial court's decision was erroneous because it was based in part on financial, language and cultural barriers "not of her own making" which rendered difficult the task of reunification with Luis. The record, however, indicates that the trial court found that the respondent's failure to reunify with Luis was not primarily the result of her financial difficulties. Moreover, although it is true that the cultural and linguistic barriers between the respondent and Luis resulted from Luis's placement with a non-Hispanic foster family, the trial court found that "[w]hile placement within the extended family or in an Hispanic foster home might have been better than use of this non-Hispanic home, those alternative options have not been available."

We recognize that some of the facts relied on by the trial court in granting the petition to terminate parental rights cannot be attributed to a lack of moral responsibility or commitment on the part of the respondent. Under § 17-43a, however, the trial court's obligation is not to make an unguided investigation of the respondent's "fault" in determining whether to grant a petition to terminate parental rights, any more than its disposition is intended to reflect some kind of moral judgment respecting a parent whose rights are terminated. Nor may this court invalidate the statutory criteria of § 17-43a merely because that criteria may in some instances implement the legislature's judgment

that parental rights should be terminated despite the fact that a particular parent, with the best intentions, personally may be incapable of overcoming deficiencies in parenting skills. "This court has '[i]nsist[ed] upon strict compliance with the statutory criteria [of § 17-43a] before termination of parental rights and subsequent adoption proceedings can occur . . . .' " (Citation omitted.) *In re Juvenile Appeal (84 – BC)*, 194 Conn. 252, 257 n.9, 479 A.2d 1204 (1984). "Insistence upon strict compliance with the statutory criteria . . . enhances the child's best interests by promoting autonomous families and by reducing the dangers of arbitrary and biased decisions amounting to state intrusion disguised under the rubric of the child's 'best interests.' " *In re Juvenile Appeal (Anonymous)*, supra, 672. In the present case, the trial court strictly complied with the requirements of § 17-43a by giving plenary consideration to both subsections (b) (2) and (d) of that statute.

We have reviewed the record together with the transcript, exhibits and briefs in this case, and we are unable to find that the facts found by the trial court as set out in its memorandum of decision are clearly erroneous.

## II

The respondent next claims that § 17-43a (b) (4) violates the due process clauses of the Connecticut and United States constitutions. She argues that the state's attempt to terminate her parental rights on the grounds that there is no ongoing parent-child relationship, and that it would be detrimental to the child's best interests not to terminate her parental rights, without any showing of parental unfitness, unconstitutionally infringes upon her fundamental right to family integrity. See *Roe* v. *Wade*, 410 U.S. 113, 155, 93 S. Ct. 705, 35 L. Ed. 2d 147, reh. denied, 410 U.S. 959, 93 S. Ct.

1409, 35 L. Ed. 2d 694 (1973); *Joyner by Lowry* v. *Dumpson,* 712 F.2d 770, 777 (2d Cir. 1983); *In re Juvenile Appeal (83 – CD),* 189 Conn. 276, 455 A.2d 1313 (1983).

Because we have concluded that the evidence was sufficient to support termination of the respondent's parental rights under § 17-43a (b) (2),[6] it is not necessary to address the respondent's constitutional challenge to § 17-43a (b) (4). "In a petition to terminate parental rights under section 17-43a, the petitioner must list the grounds relied upon and, if any one of these grounds may be upheld, the order to terminate must stand. *In re Juvenile Appeal (83 – BC),* 189 Conn. 66, 69, 454 A.2d 1262 (1983) (where a mother claimed there was insufficient evidence to terminate her rights on either of two grounds under § 17-43a [b], our conclusion that one of the grounds was supported by the evidence made it unnecessary to consider whether the second ground was supported). Since the [respondent unsuccessfully challenges] one of the statutory bases on which the trial court terminated her parental rights, we do not decide the constitutional issues she has raised in connection with the other . . . [ground]." *In re Juvenile Appeal (84 – BC),* supra, 258.

There is no error.

In this opinion the other justices concurred.

---

[6] The respondent has not challenged the constitutionality of General Statutes § 17-43a (b) (2).