MEMORANDUM OF DECISION
On June 17, 1999, the Department of Children and Families, hereafter "DCF", filed petitions for the termination of the parental rights of Gerald C. to his three children, Danielle, Stephanie and Joshua C., then ages five, three and three-quarters and two, respectively. The children's biological mother had previously consented to the termination of her parental rights on July 15, 1998 and her rights had been terminated. (Holden, J.). The trial on the pending petitions was held on May 22, 2000 and Gerald C. failed to attend the trial, although his counsel was present.
For the reasons set forth below, the court grants the termination petitions as Gerald C. has failed to rehabilitate so that he could parent these children within the statutory meaning of those terms. Connecticut General Statutes Section 17a-112(c)(3)(B).
From the evidence presented, the court finds the following facts:
 A. FACTS 1. Procedural Background.
The procedural background of these petitions is complex, because the children were removed from the care of their mother on numerous occasions, only to be returned to her again. On November 15, 1995, orders of temporary custody were secured and neglect petitions filed by DCF regarding Danielle and Stephanie. Joshua had not yet been born. The children's mother had serious mental health difficulties. She had attempted to commit suicide twice prior to the children's removal. Both she and Gerald C., who did not live in the household, were unable to care for the two girls at that time.
The girls were adjudicated neglected on October 21, 1996 and then returned to their mother under protective supervision. After Joshua's birth on May 7, 1997, the family's situation had not improved. He was only in the care of his family for a few weeks after his birth. An application for an order of temporary custody and a neglect petition was filed on his behalf on May 30, 1997. Soon thereafter, both Danielle and Stephanie were also removed from their mother's care on July 19, 1997. CT Page 6724 They remained in the care of DCF for a period of sixty days before once again being returned to their mother. Meantime, Joshua was adjudicated a neglected child on December 12, 1997.
On April 17, 1998, both Danielle and Stephanie were removed for the last time from their mother. On May 20, 1998, they were adjudicated neglected and they have remained in DCF care since that time. Their commitments have regularly been extended. Joshua, during this time, remained in DCF care and his commitment was extended to December 2, 1998. Prior to that time, as noted, his mother's rights to him had been terminated, based on her consent. His father, however, did not consent to such termination. Unfortunately, Joshua's commitment to DCF inadvertently expired on December 19, 1999. Although he remained in care, a new order of temporary custody was secured and a neglect petition filed. Joshua was adjudicated a neglected child for the second time on January 19, 2000. The matter was consolidated with the pending termination petitions for trial.
2. Gerald C., the father.
Gerald C. is now twenty-five years old. He attended high school but did not graduate. He has never held any employment, but now receives social security disability income due to his mental health difficulties. He began his relationship with the children's mother, Heidi B., when he was eighteen. She is eleven years his senior. And although they never lived together, their relationship was troubled by their combined mental health problems. Gerald's reports about his mental illness to the various service providers are confused and inconsistent. It appears he has been diagnosed with various illnesses, most recently with depression, for which he received medication. While he was actively engaged in the relationship with the children's mother, there was some domestic violence and suspicions of alcohol and substance abuse.
DCF has provided services to Gerald, the children and the mother since 1995. There were extensive services made available to both parents to keep the children in the home and then to reunify them with the parents during the repeated times that they were removed from thier care.[2]
For Gerald C. individually, there were several referrals prior to the children's removal. There was a referral to New Beginnings for parenting, Kinsella Commons for mental health services, Catholic Services and at least four other providers for couples counseling as well as a referral to a psychiatrist to monitor his medications. More recently, there was a referral to the Morris Foundation in October 30, 1998 to address issues of alcohol and substance abuse. The assessment at that time did not reveal any illegal substances in his system, nor did Gerald C. believe he had an alcohol problem. Nonetheless, the assessment recommended Gerald CT Page 6725 continue in individual therapy and continue to take his prescribed medications.
The DCF social worker testified at trial that Gerald never complied with any of the services to which he was referred nor with the expectations and specific steps set for him at various times by the court. The first expectations were set in 1997 and continued through the specific steps set in December, 1999. There were a total of eight such orders at different times, reflecting the same concerns. Gerald C. did not keep his whereabouts known to DCF. At times, the only way DCF knew anything about him was through the various service providers. He never contacted DCF to inquire about his children or discuss any issues with the worker. He did not attend the various programs to which he was referred. He never completed any such programs. He did not attend individual counseling nor secure psychiatric treatment. He attended the first day of a court-ordered psychological evaluation, but failed to attend for the parent-child interactional session and therefore could not be assessed with his children. He only once or twice attended court sessions, but mainly he was conspicuous by his absence as he was on the day of trial.
He had supervised visitation with all of the children at the Family Services Visitation Center. When he attended, visitation went reasonably well as the children responded to him. But Gerald C. was predictably erratic in his attendance and finally in July, 1999, visitation was terminated. Basically, Gerald's conduct has spoken far louder than anything he himself has said or others have said about him. That conduct has manifested a consistent and clear inability to take the steps necessary to parent these children. It demonstrates a consistent lack of commitment and an inability to rehabilitate himself so that such an outcome might be likely.
3. The children, Danielle, Stephanie and Joshua.
The three children have had multiple placements in foster care. For the girls, those placements ended when they were on three separate occasions returned to the care of their mother. At times, they were also placed separately. Danielle has had a total of six foster care placements and Stephanie has had five. Joshua has had three such placements. Fortunately, all of them are now together and have been since March, 1999 when Danielle joined her siblings who had previously been placed in this home. They are placed with a foster family that has managed to stabilize them and to whom they are bonded. This family seeks to adopt them.
In addition to some of the expected difficulties these children have, all three children have specialized medical care needs. Joshua and CT Page 6726 Stephanie each have a lazy eye and need specialized eye care and in-home follow up. The two girls are anemic. Stephanie has a webbed hand, which will require surgery. Joshua suffers from food allergies. Danielle has frequent nose bleeding, which is being medically investigated. Due to their disrupted early childhood experiences, the two girls have been receiving counseling which is in the process of being discontinued because of the progress that they have made. The two girls are also doing reasonably well in their school environments.
 B. ADJUDICATORY FINDINGS 1. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes Section 17a-112
(c)(1). The petitions allege that DCF has made reasonable efforts to reunify the family, but that Gerald C. is unable or unwilling to benefit from such services.
The court finds, from the clear and convincing evidence, that DCF made more than reasonable efforts to reunify Gerald C. with his three children. Further, the court finds from the clear and convincing evidence, that he has been both unable and unwilling to benefit from those services as he does not attend or engage in them.
2. Gerald C.'s Failure to Rehabilitate
Danielle and Stephanie were last adjudicated neglected on May 20, 1998 and Joshua was last adjudicated neglected on January 19, 2000, but had previously been adjudicated neglected on December 12, 1997. The court further finds, by clear and convincing evidence, that as of the date of the filing of the termination petitions, Gerald C. had not achieved such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, he could assume responsible positions in the children's lives. Connecticut General Statutes Section 17a-112(c)(3)(B). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent". Inre Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986), see also Inre Juvenile Appeal, 1 Conn. App. 463, 477, 473 A.2d 795 (1984). The evidence clearly demonstrates that he has taken none of the steps CT Page 6727 necessary to parent the children.
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time."In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In re Hector L.,53 Conn. App. 359, 366-367, ___ A.2d ___ (1999). Because of this requirement that the court predict what may happen within a "reasonable time" after the filing of the termination petitions, the court must consider not only the parent's conduct prior to the filing of those petitions, but also the conduct since that time. In this case since June, 1999, there is no evidence that Gerald C. has done anything different than in the years before the filing of the termination petitions.
 C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes Section 17a-112 (e):
(1) Appropriate and timely services were provided by DCF to the family. These included services to benefit the children and referrals for Gerald C. DCF also provided visitation and case management services.
(2) As previously noted, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court has detailed the court expectations and specifc steps ordered by the court. Gerald C. was not able to minimally fulfill them.
4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. As noted, all three children are bonded to their foster parents. They do not speak of their father whom they have not seen in over ten months.
5) Finding regarding the ages of the children: Danielle is six years old, Stephanie will be five on July 10 and Joshua is three years old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the CT Page 6728 children as part of an effort to reunite the children with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. As detailed above, the court finds that Gerald C. has made no changes in his life to accommodate the care and nurturing of these children.
7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the children, or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. DCF has taken many steps for many years to encourage Gerald C. to have a meaningful relationship with his children and to rehabilitate himself, which he has been unable to accomplish.
 D. DISPOSITION
The court concludes, from the clear and convincing evidence, that Gerald C. cannot care for his three children at the present time nor will he be able to do so in the reasonably foreseeable future. The court concludes, from the clear and convincing testimony, that it is in the best interests of Danielle, Stephanie and Joshua to have permanency and stability in their lives. The court further finds that that goal can best be achieved by adoption. The foster parents addressed the court during the trial. They have amply demonstrated their support of these children and their desire to adopt them.
Based on the foregoing, the court concludes, from the clear and convincing evidence, that it is in the best interest of the children that the biological father's rights to them be terminated. The court therefore orders that a termination of parental rights enter with respect to Gerald C. The court appoints the Commissioner of the Department of Children and Families the statutory parent for Danielle, Stephanie and Joshua. The court directs that the children's present foster parents be given first consideration in adopting the children, given the strong connections they have with them. The court further orders that a permanency plan for the children be filed and as well as a review plan, in accordance with state and federal law.
 Barbara M. Quinn, Presiding Judge Child Protection Session