[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families, DCF. DCF is seeking to terminate the parental rights of the biological father of Eugene Alexander C., hereinafter referred to as Alexander. The father will be referred to as Eugene C. The child's mother, Donna S., had CT Page 1252 consented to the termination of her parental rights on October 4, 2000.
I. Procedural Background
On September 2, 1998, DCF filed neglect petitions and sought an Order of Temporary Custody, OTC, alleging that Alexander was neglected in that the child was allowed to live in conditions injurious to his well being. The OTC was granted on September 9, 1998. Subsequently the child was adjudged neglected and committed to the care and custody of DCF
On April 6, 2000, DCF filed a petition to terminate the parental rights of both of Alexander's parents. On June 6, 2000, the court entered a finding that continuing efforts to reunify the family were no longer appropriate.
The trial for the termination of the father's parental rights took place on November 27, 2000. Both Eugene C. and Donna S. attended.
For the reasons set forth below, the court grants the termination petition as to Eugene C. on the grounds that he has failed to rehabilitate and because there is no ongoing parent-child relationship. Connecticut General Statutes 17a-112(c).
From the evidence presented, the court finds the following facts:
II. FACTS
Donna, Alexander's mother, is now thirty-one years old. She is an only child and by all accounts had an unexceptional childhood. Donna did not graduate from high school, having left in her eleventh year.
Donna married Patrick S. in 1989. They had four children, the youngest of whom was born in May 1993. A fifth child had died in infancy. As a result of Patrick's physical and emotional abuse of his wife and children, Donna and Patrick separated in 1992. Donna then met Eugene. Together they had two children, Eugene Nicholas C., born in June 1995, and Alexander.
Eugene, the child's father, is now twenty-nine years old. His parents separated when he was five years old, ostensibly due to the father's substance abuse problems. Eugene did not graduate from high school, having also left in his eleventh year.
Eugene and Donna lived together for several years. Prior to Alexander's removal from his mother's care in September 1998, there were a number of DCF referrals concerning the care of other siblings. Most significantly, CT Page 1253 In February 1998, DCF was given custody of all Donna's children due to allegations of physical and sexual abuse by Eugene. In December 1998, Eugene entered a plea of nolo contendre to the charges of first-degree sexual assault and risk of injury to a minor. Both charges stem from allegations of sexual abuse perpetrated upon one of Donna's daughters, Alexander's half-sister. Eugene was sentenced to a term of confinement of twelve years, execution suspended after forty-two months, with a two-year probationary period. The criminal court entered a full protective order that prohibits contact between Eugene and any children.
Alexander was born on August 31, 1998. DCF removed the child from the hospital and sought and secured an order of temporary custody on September 2, 1998. DCF also filed a neglect petition. Alexander was adjudicated neglected on October 7, 1998. His commitment to DCF has been extended several times since that date. Alexander has remained in the same foster care since September 2, 1998, two days after his birth.
His father has been incarcerated for most of Alexander's life. While incarcerated, Eugene never contacted DCF concerning the welfare of Alexander. Although notified, he did not participate in any of the administrative reviews prepared for this minor child. He did not acknowledge birthdates, holidays or anniversaries. Although there is evidence that individual counseling is available to inmates, albeit sporadically, there is no evidence that Eugene took advantage of these limited opportunities in an effort to rehabilitate himself.
Alexander is now two years old and has been in foster care since birth. He is a happy, healthy, well-adjusted child who has bonded with all eight members of the foster family household. His foster mother, who testified at the termination proceedings, referred to this small child as her beautiful baby. She and her husband both wish to adopt Alexander
III. ADJUDICATORY FINDINGS
1. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes 17a-112(c)(1). DCF does allege that Eugene is unable or unwilling to benefit from such services. However, in the present case no finding is necessary inasmuch as at a prior hearing pursuant to Connecticut General Statutes 17a-110, CT Page 1254 there was already a finding that such efforts are not appropriate.
2. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, DCF must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael B., 49 Conn. App. 510,512, 714 A.2d 1279 (1998). The facts that a court can rely upon during this adjudicatory phase are also statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a). In the present case the relevant date is April 6, 2000.
a. Failure to Rehabilitate.
In October 1998, the court confirmed an order of temporary custody and entered court-ordered expectations. Those included
 Keeping all appointments set by DCF; Visiting the child as often as DCF permitted; Participating in parenting, individual and substance abuse counseling; Obtaining adequate housing and maintaining legal income; and Having no involvement with the criminal justice system.
To prevail on this basis, DCF must establish that as of the date of the filing of the termination petition, Eugene had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in his life. Connecticut General Statutes17a-112(c)(3)(B). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203,504 A.2d 532 (1986), see also In re Juvenile Appeal, 1 Conn. App. 463,477, 473 A.2d 795 (1984
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In reHector L., 53 Conn. App. 359, 366-367, 703 A.2d 106 (1999).
In the present case, Eugene's rehabilitation efforts have been negligible. This court must conclude that as of the time of this petition, Eugene has made minimal progress toward rehabilitation. The court further concludes Eugene's lack of rehabilitation continued even after the filing of the termination petition. This court finally CT Page 1255 concludes that the time still required for him to fully rehabilitate and to be able to care for any child reliably is lengthy, especially in light of his current incarceration. The court therefore finds, from the clear and convincing evidence, that Eugene cannot be rehabilitated as a parent of this child within the reasonably foreseeable future, consistent with his needs for permanency.
b. No Ongoing Parent/Child Relationship
DCF alleges that Alexander has no ongoing parent/child relationship with his father. This is the type of relationship that would ordinarily develop as the result of a parent providing the child's daily physical, emotional, moral and educational need. DCF further alleges that the time required to establish such a relationship would be detrimental to Alexander's best interests. Connecticut General Statutes 17a-112 (c)(3)(D). Termination on this ground is inappropriate unless "the child has no present memories or feelings for the natural parent." In re Jessica B.,217 Conn. 459, 468 A.2d 597 (1991). Alternatively, DCF must establish that even if a child has memories of the parent, "no positive emotional aspects of the relationship survive." In re Jessica B.,217 Conn. at 468-70.
"Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of "interest, concern or responsibility' for the welfare of a child." In re Luke G.,40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985) In re Migdalia M.,6 Conn. App. 194, 208-209, 504 A.2d 532 (1986). While the biological father expressed an interest at trial in maintaining a relationship with Alexander, he took no affirmative action while incarcerated.
DCF provided testimony from a variety of witnesses, including Alexander's current foster mother. Alexander was placed in this home virtually at birth. These parents are the only parents he has known. These siblings are the only ones to whom he relates. The child has never had any contact with his biological father. Alexander has no feelings for his biological father within the meaning of the statute. As stated by the Appellate Court, "We must conclude, therefore, that the phrase `feelings for the natural parent' refers to feelings of a positive nature." In reJuvenile Appeal (84-6), 2 Conn. App. 705, 709, 483 A.2d 1101 (1984).
Having found that there is no parent/child relationship, the court must next decide whether to allow further time to develop such a relationship. The primary consideration is the best interests of the child. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when CT Page 1256 such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, 458 U.S. 502, 513 (1982). Because this father had never had any contact with his child, to allow further time would be detrimental. Additionally, given the nature of the current protective order, such actions would be futile.
For the foregoing reasons, the court finds by clear and convincing evidence that Alexander has no ongoing parent/child relationship with Eugene within the meaning of the applicable statutes.
IV. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes 17a-112(e):
(1) Appropriate and timely services were provided by DCF to the family. These services benefited the child. Unfortunately, due to Eugene's' status as an incarcerated felon, DCF was not in a position to provide him with regular counseling.
(2) As previously noted, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family. Unfortunately, due to father's continued incarceration, reunification efforts were inappropriate.
(3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Eugene but he was not able to even minimally fulfill them.
(4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Alexander has settled into his foster home and calls his foster parents "mommy" and "poppy". He is not attached to his biological father, who has never been a presence in his life.
(5) Finding regarding the age of the child. Eugene was born on August 1998 and is two years old.
(6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court CT Page 1257 may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that this parent made no effort to change his life to accommodate the care and nurturing of this child. He has never contacted the child, has never acknowledged the child.
(7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted.
V. DISPOSITION
The court concludes, from the clear and convincing evidence, that there is no biological parent ready now or in the foreseeable future, who will be able to care for Alexander. The court concludes, from the clear and convincing testimony, that it is in Alexander's best interests to have permanency and stability in his life. The court further finds that adoption by a family that understands and can accommodate his special needs is the avenue most likely to accomplish this result for Alexander. The court also finds the testimony concerning Alexander's adoptability persuasive. His current foster mother offered compelling testimony concerning her desire to adopt this child.
The court therefore orders that a termination of parental rights enter with respect to Eugene C. The court further orders that a permanency plan for Alexander be submitted within thirty days. A review plan for him shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge January 15, 2001