[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Regarding Termination of Parental Rights
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families. The Department is seeking to terminate the parental rights of Roselyn H. biological parents, Rosita G. and Larry H.
I. Procedural Background
On December 5, 1997 the Department of Children and Families filed neglect petitions and sought an order of temporary custody alleging that Roselyn was neglected in that the child was denied proper care and attention ad further was allowed to live in conditions injurious to her well being. The order of temporary custody was sustained on December 12, 1997. Subsequently the child was adjudged neglected and committed to the care and custody of the Department. On March 24, 1999 the court entered a finding that continuing efforts to reunify the child with her father were no longer appropriate.
On June 6, 2000, the Department filed a petition to terminate the CT Page 2403 parental rights of both of Roselyn's parents. With respect to Respondent Mother, the Department alleged that the child had been abandoned and further that Respondent Mother had failed to rehabilitate. The allegations concerning Respondent Father were that the child had been abandoned and further that there was no ongoing parent-child relationship.
On December 18, 2000 this Court presided over a trial in this matter. Present in the courtroom were Assistant Attorney General Mildred Bauza, counsel for the Department of Children and Families, Marcus Hallum, counsel for the mother, William Kinloch, counsel for the father, Geraldine Menn, counsel for the minor child, Larry H. father of the child Roselyn H. and Maria Acevedo, social worker for the Department of Children and Families. Respondent Mother was not present in court for any portion of the proceedings.
For the reasons set forth below, the court grants the termination petition on the grounds (1) Respondent Mother has failed to rehabilitate; (2) Respondent Mother has abandoned this child; and (3) there is no ongoing parent-child relationship between Respondent Father and this child. Connecticut General Statutes 17a-112(c).
II. Facts
 A. Respondent Mother, Rosita G.
Rosita G. this child's biological mother, was born in Brooklyn, New York in 1969. She has nine siblings Ms G. did not graduate from school, having left in fifth grade. She has four children, the youngest of whom is Roselyn.
Prior to Roselyn's initial commitment there was evidence that Ms G. had repeatedly ignored the child's medical and physical needs. The Department was forced to secure an order of temporary custody when Roselyn's parents left this infant in the care of an individual who lacked the physical resources to care for this child.
Roselyn was committed to the care and custody of the Department on February 25, 1998. Since that time, Ms G. has done nothing to reunify with this child. Initially she visited the child sporadically. Eventually she stopped visits entirely. She has never acknowledged the child's birthday. She ignored the child at Christmas and other holiday times. She has never sent any cards, gifts or letters. She failed to participate in any administrative case reviews. She seldom attended any court proceedings. CT Page 2404
Ms G has failed to complete any of the procedure recommended by the Department in its efforts to reunify this family. She has constantly tested positive for illicit substances. She has not completed any drug rehabilitation. She has failed to maintain adequate housing and legal income. She has frequently committed criminal acts and consequently has been intermittently incarcerated during the relevant time period. She has not kept either her counsel or the Department aware of her location and has probably been living out of state for a large portion of the relevant time frame. She has refused to attend therapy or counseling. In short, she has done nothing to achieve a level of competency that would encourage reunification.
B. Respondent Father, Larry H.
The trial provided little information concerning Larry H. this child's biological "father. Born in Alabama on May 26, 1971, he spent a large portion of his youth in Puerto Rico. He moved to Connecticut in 1995. Sometime thereafter he met the child's mother. They resided together for approximately seventeen months. During that time, on April 13, 1997, Roselyn was born. At the time the Department sought an order of temporary custody, Mr. H. was visiting relatives in Puerto Rico. During Mr. H.'s absence a court entered a judgment wherein Roselyn was adjudged neglected and committed to the care and custody of the Department.
On February 25, 1998 Mr. H did attend a scheduled court hearing. He had not been named as father on Roselyn's birth certificate. Consequently the court ordered paternity testing. Test results confirmed that Mr. H is Roselyn's biological father. On September 11, 1998 Mr. H was convicted of several drug-related offenses. He has remained incarcerated since that date. His tentative release date is September 2001.
On several occasions since Mr. H's arrest, the Department has transported Roselyn to a correctional facility where the child visited her father. Although the initial visits were unremarkable, on all subsequent occasions Roselyn was extremely irritated and distracted. After only two visits, the child vigorously resisted leaving her foster home and cried hysterically during the entire trip to the correction facility. Eventually the visits stopped. The Department's decision to stop these visits was based solely upon the child's responses.
In all respects, Mr. H acted appropriately in the presence of his child. During the months preceding this trial, Mr. H sporadically sent letters and photographs to Roselyn. Additionally he set his daughter a hand drawn card. However, he did not begin sending any correspondence until January, 2000. As a result, for over two years Roselyn had no contact with her father. CT Page 2405
Mr. H has been incarcerated for most of Roselyn's life. While incarcerated, he seldom contacted the Department concerning his child's welfare. Although notified, he did not participate in most of the administrative reviews prepared for this minor child. He did not acknowledge birthdates, holidays or anniversaries. Mr. H did request an administrative hearing wherein he requested that Roselyn visit him at the correction facility. Ultimately, all parties agreed to allow father to send correspondence to this child. That correspondence has been infrequent, at best.
C. The Child, Roselyn H
Roselyn was born on April, 1997. Approximately eight months later the Department removed the child from her home. She has seldom seen her mother since that date. Roselyn is now three years old and has been in foster care most of her young life. She is a happy, healthy, well-adjusted child who has bonded with her foster family's household where she has remained for over a year. Her foster parents wish to adopt Roselyn.
III. Adjudicatory Findings
 A. Reasonable Reunification Efforts
In order to terminate parental rights, the Department must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes17a-112(c)(1). The Department does allege that these parents are unable or unwilling to benefit from such services. However, in the present case no finding is necessary inasmuch as at a prior hearing pursuant to Connecticut General Statutes 17a-110, there was already a finding that such efforts are not appropriate.
B. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, the Department must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael B.,49 Conn. App. 510, 512 (1998). The facts that a court can rely upon during this adjudicatory phase are also statutorily limited to events preceding either the filing of the petition or its latest amendment. CT Page 2406 Connecticut Practice Book 33-3(a). In the present case the relevant date is April 6, 2000.
1. Respondent Mother's Failure to Rehabilitate.
In December 1997 the court confirmed an order of temporary custody and entered court-ordered expectations. Those included
 Keep all appointments set by the Department; Visit the child as often as DCF permitted; Participate in parenting, individual and substance abuse counseling; Obtain adequate housing and maintaining legal income; No substance abuse; Submit to substance abuse assessment; and Have no involvement with the criminal justice system.
To prevail on this basis, the Department must establish that as of the date of the filing of the termination petition, Rosita G had not achieved a requisite degree of personal rehabilitation. That level must be such as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in her daughter's life. Connecticut General Statutes 17a-112 (c)(3)(B). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986),see also In re Juvenile Appeal, 1 Conn. App. 463, 477, 473 A.2d 795
(1984).
The statutory framework requires the court to analyze the parent's rehabilitation as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In reHector L., 53 Conn. App. 359, 366-367, 730 A.2d 106 (1999). Because of this requirement that the court predict what may happen within a "reasonable time" after the filing of the termination petition, the court must consider not only Ms. G's conduct prior to the filing of those petitions, but also her conduct after that time. In this case, this was a period of slightly less eight months.
This court must conclude that as of the time of this petition, Ms. G has made minimal progress toward rehabilitation. The court further concludes her lack of rehabilitation continued even after the filing of the termination petition. This court finally concludes that the time still required for her to fully rehabilitate and to be able to "care for any child reliably is indeterminate. Indeed there is little to suggest that such rehabilitation will ever occur. The court therefore finds, from CT Page 2407 the clear and convincing evidence, that Ms. G cannot be rehabilitated as a parent of this child within the reasonably foreseeable future, consistent with her needs for permanency.
2. Abandonment
The Department also alleges that Ms. G abandoned her daughter. "Abandonment focuses on the parent's conduct. . . .A lack of interest in the child is not the sole criterion in determining abandonment. . . .General Statutes [Rev. to 1995] § 17a-112 (b)(1) [now §17a-112(c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . .Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . ." In re John G., 56 Conn. App. 12, 20, 740 A.2d 496 (1 999) (internal quotations omitted).
Our statutes do not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. To prevail, a parent must maintain, on a continuing basis, a reasonable degree of interest in the welfare of his or her child. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . .In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. Ms. G last saw her child in 1999. She has ignored each and every one of this child's developmental needs.
 3. No Ongoing Parent — Child Relationship Between Respondent Father, Larry H and This Child
With respect to Mr. H, the Department has alleged that Roselyn has no ongoing parent — child relationship with her biological father. This is the type of relationship that would ordinarily develop as the result of a parent providing the child's daily physical, emotional, moral and educational needs. The Department further alleges that the time CT Page 2408 required to establish such a relationship would be detrimental to Roselyn's best interests. Connecticut General Statutes 17a-112(c)(3)(D). Termination on this ground is inappropriate unless "the child has no present memories or feelings for the natural parent." In re Jessica B.,217 Conn. 459 (1991). Alternatively, the Department must establish that even if a child has memories of the parent, "no positive emotional aspects of the relationship survive." In re Jessica B.,217 Conn. at 468-70.
"Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of "interest, concern or responsibility' for the welfare of a child." In re Luke G.,40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985); In re Migdalia M.,6 Conn. App. at 208-9. While the biological father expressed an interest at trial in maintaining a relationship with Roselyn, his efforts can best be described as too little too late.
The Department provided testimony from a variety of witnesses. Roselyn was placed in foster care at a young age. She has been in her current home for approximately one year. These parents are the only parents to whom she relates.
This child has had little contact with her biological father. Their interactions were more in the nature of friendly strangers rather than parent and child. Roselyn has no feelings for her biological father within the meaning of the statute. As stated by the Appellate Court, "We must conclude . . . that the phrase "feelings for the natural parent' refers to feelings of a positive nature." In re Juvenile Appeal (84-6),2 Conn. App. 705, 709, 483 A.2d 1101 (1984).
Having found that there is no parent — child relationship, the court must next decide whether to allow further time to develop such a relationship. The primary consideration is the best interests of the child. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, 458 U.S. 502, 513 (1982). Because this father has had little contact with his child in over three years, and none of it has been substantial, to allow further time would be detrimental.
For the foregoing reasons, the court finds by clear and convincing evidence that Roselyn has no ongoing parent — child relationship with Mr. H within the meaning of the applicable statutes.
C. Required Findings
CT Page 2409
The court makes the following factual findings required by Connecticut General Statutes 17a-112(e):
(1) Appropriate and timely services were provided by the Department to the family. These services benefited the child. Ms. G failed to accept any of the services. Unfortunately, Mr. H's incarceration precluded his ability to accept most of the Department's services. In the one area where the Department could assist, visits, a series of delays ultimately resulted in a situation where visits between father and child were contra — indicated.
(2) As previously noted, the court finds by clear and convincing evidence that the Department made reasonable efforts to reunify the family. Mother refused to participate. Unfortunately, due to the detrimental effect that visits had upon the child, reunification efforts with father were inappropriate.
(3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for both parents but they were not able to even minimally fulfill them.
(4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Roselyn has settled into her foster home. She is not attached to her biological parents, neither of whom have ever been a presence in her life
(5) Finding regarding the age of the child. Roselyn was born on April 1997 and is three years old.
(6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him CT Page 2410 to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that these parents made no effort to change their lives to accommodate the care and nurturing of this child.
(7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted.
IV. Disposition
The court concludes, from the clear and convincing evidence, that there is no biological parent ready now or in the foreseeable future, who will be able to care for Roselyn. The court concludes, from the clear and convincing testimony, that it is Roselyn's best interests to have permanency and stability in her life. The court further finds that adoption by a family that understands and can accommodate her special needs is the avenue most likely to accomplish this result for Roselyn. The court also finds the testimony concerning Roselyn's adoptability persuasive.
The court therefore orders that a termination of parental rights enter with respect to both Rosita G and Larry H. The court further orders that a permanency plan for Roselyn be submitted within thirty days. A review plan for her shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge February 9, 2001